1  GEORGE S. CARDONA
   Acting United States Attorney
2  SANDRA R. BROWN
   Assistant United States Attorney
3  Chief, Tax Division
   ANDREW T. PRIBE (CA SBN: 254904)
4  Assistant United States Attorney
       300 N. Los Angeles Street
5      Federal Building, Room 7211
       Los Angeles, California 90012
6      Telephone: (213) 894-6551
       Facsimile: (213) 894-0115
7      E-mail: andrew.t.pribe@usdoj.gov

8  *Attorneys for the United States of America*

9
                  UNITED STATES DISTRICT COURT
10               CENTRAL DISTRICT OF CALIFORNIA
                       SOUTHERN DIVISION
11

12  UNITED STATES OF AMERICA          )
                                      )   Case No.: SACV08-668 JVS(MLGx)
13            Plaintiff,              )
          vs.                         )
14                                    )   Submission of authorities in support
    COMCO MANAGEMENT                  )   of the United States of America's
15  CORPORATION; CONCORD              )   response to Defendant's Rule 37
    FUNDING CO., LLC; METCO           )   motion
16  MANAGEMENT CORPORATION;           )
    MONEX CREDIT CO.; MONEX           )
17  DEPOSIT CO.; NEWPORT              )
    SERVICE CORP.; and PCCE, Inc.,    )
18                                    )
              Defendants.             )
19

20

21

22

23

24

25

26

27

28

- 1 -

1      Attached are:

2  A.  2008 Report to Congress on the Whistleblower Program.

3  B.  P.L. 109-432, § 406.

4  C.  IRS LMSB Memorandum Control No. LMSB-4-0508-033 (dated July

5      21, 2008).

6  D.  IRS LMSB Memorandum Control No. LMSB-4-1108-052 (dated

7      Dec. 3, 2008).

8

9

10  DATED: October 13, 2009      GEORGE S. CARDONA
11      Acting United States Attorney

12      SANDRA R. BROWN
    Assistant United States Attorney
13      Chief, Tax Division

14      **/s/ Andrew T. Pribe**

15      ANDREW T. PRIBE
    Assistant United States Attorney
16      Attorney for Defendant
    United States of America

17

18

19

20

21

22

23

24

25

26

27

28

# U.S. Supplemental Authority

# A

## Executive Summary

Section 7623(b), providing for whistleblower awards, was enacted as part of the Tax Relief and Health Care Act of 2006 (the Act).  For information provided to the Internal Revenue Service (IRS) after December 19, 2006, new section 7623(b) generally requires the IRS to pay awards on amounts in dispute over $2 million if information provided by an individual results in the collection of tax, penalties, interest, and other amounts.  The law sets award ranges based on percentages of the collected proceeds, with the award in particular cases to be determined by a Whistleblower Office that operates at the direction of the IRS Commissioner.  On February 2, 2007, the IRS announced the appointment of Stephen Whitlock as the first Director of the IRS Whistleblower Office.

Section 406(c) of the Act requires the Secretary of the Treasury to conduct a study and report to Congress each year on the use of section 7623, including an analysis of the use of that section and the results obtained, as well as any legislative or administrative recommendations regarding section 7623 and its application.  This is the first report submitted in accordance with that requirement and it discusses the progress made by the IRS Whistleblower Office in the first 12 months of its existence.  The report includes a review of the law and regulations applicable to whistleblower awards, changes made in program administration since the Act, the status of new program guidance required by the Act, and data on awards paid

The overarching purpose behind the Act was to provide incentives for persons with knowledge of significant tax noncompliance to come forward and assist the IRS.  With a few notable exceptions, pre-amendment submissions under section 7623 were dominated by claims well below the $2,000,000 threshold set in the new law.  Only 12 of 227 pre-amendment full paid claims in 2007 involved collections of more than $2 million, and only 3 involved collections of more than $10 million.  In contrast, in the twelve months since the Whistleblower Office was established, the IRS received 116 submissions that each alleged more than $2 million in tax noncompliance, 24 of which alleged more than $10 million.  The individuals submitting this information claim to have inside knowledge of the transactions they are reporting, often with extensive documentation to support their claims.

## Program History

### *Prior Law and Policy*

The IRS has had the authority to pay awards to whistleblowers[1] for many years. What is now section 7623(a)[2] of the Internal Revenue Code (IRC) has its origins in legislation enacted in 1867. The original law provided the Secretary with the authority "to pay such sums as he deems necessary for detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same." Prior to 1996, payments were made from appropriated funds. Amendments in that year expanded the purposes for which awards may be paid, adding "detecting underpayments of tax" as a basis for making an award. The 1996 amendments also changed the source of funds from IRS operating funds to proceeds of amounts collected from the taxpayer (other than interest).[3]

Prior to the 2006 amendments to section 7623, awards to whistleblowers were discretionary, and the amount was determined based on IRS policy.[4] The policy provided a framework for assessing the contribution of the information to the collection of proceeds from a taxpayer, and allowed for awards of 1%, 10% or 15% of proceeds, generally not to exceed $10 million.

The Internal Revenue Manual (IRM) provided several grounds for rejecting a claim for award, including participation in the evasion scheme that was the subject of the report provided by the whistleblower[5]. Common reasons for rejecting claims were

- the information provided was of no value,

- the information was already known to the IRS or available in public records, or

- there was no collection of taxes and penalties from which an award could be paid.

The information might be of no value because it did not provide a sufficient basis for initiating an examination or investigation of the issue presented, or because the examination resulted in a "no change" finding.

---

[1] The IRS has generally referred to persons who submit information under Section 7623 as "informants," and referred to the program as the "Informant Claims Program." Since the law now refers to "whistleblowers," that term will be used in this report except where the term "informant" appears in an office title or published document.

[2] The 2006 amendments re-designated the prior Section 7623 as section 7623(a), added new provisions as section 7623(b), and included program administration requirements that were not incorporated into the Internal Revenue Code. The appendix to this report reprints Section 7623, as amended, as well as additional provisions in the Act that were not incorporated into the Internal Revenue Code.

[3] The IRS has separate authority to pay informant expenses from appropriated funds available for confidential Criminal Investigation expenditures. Those payments are made under authorities delegated to IRS CI, and are not within the scope of the Whistleblower Office or this report to Congress.

[4] Regulations implementing what is now section 7623(a) appear at 26 CFR 301.7623-1. The most recent version of the policy was issued in 2004, as Policy Statement P-4-27, and reprinted as Publication 733.

[5] IRM 25.2.2.17

6/24/2008

00003

## New Law

Section 7623(b) was created by section 406 of the Tax Relief and Health Care Act of 2006 (the Act) (PL 109-432). Section 7623(b) established a mandatory whistleblower award program that included a new Whistleblower Office. The Whistleblower Office operates at the direction of the Commissioner of Internal Revenue. It coordinates and consults with other divisions of the IRS as directed by the Commissioner, analyzes information submitted, and makes award determinations. The Whistleblower Office may investigate the matter itself, or assign it to the appropriate IRS office for investigation. Determinations by the Whistleblower Office may be appealed to the US Tax Court.

A whistleblower must meet several conditions to qualify for the mandatory award program[6]. In order to qualify for a whistleblower award, the information must:

- relate to a tax noncompliance matter in which the tax, penalties, interest, additions to tax and additional amounts in dispute exceed $2,000,000;

- relate to a taxpayer, and in the case of an individual taxpayer, one whose gross income exceeds $200,000 for at least one of the tax years in question; and

- substantially contribute to a decision to take administrative or judicial action that results in the collection of tax, penalties, interest, additions to tax and additional amounts.

If the above conditions are met, the whistleblower must receive an award of at least 15 percent but not more than 30 percent of the collected proceeds resulting from administrative or judicial actions (including related actions) or from any settlement in response to an administrative or judicial action. The maximum award percentage is reduced to 10 percent for cases based principally on specific allegations disclosed in listed information sources (such as government audit reports), and may also be reduced if the whistleblower planned and initiated the actions that led to the underpayment of tax.

## Implementing the New Law

On February 2, 2007, the IRS announced the appointment of Stephen Whitlock as the first Director of the Whistleblower Office. One of his first actions was to participate in a forum sponsored by the Senate Finance Committee, which brought together Government and private sector stakeholders to share their perspectives and expectations regarding the whistleblower program. Almost immediately, the IRS began to receive submissions from whistleblowers with allegations of tax noncompliance well in excess of the $2 million threshold in section 7623(b). Thus, the IRS began processing cases under the new law even as it was working on the most basic questions of program design.

---

[6] If the submission does not meet the criteria for 7623(b) consideration, it may be considered for an award under the pre-Act discretionary authority (what is now section 7623(a)).

6/24/2008

## Actions Taken in the First Twelve Months

Staffing:  The Whistleblower Office has a staff of eight, that includes six analysts with decades of experience in a broad array of IRS compliance programs.

Program Analysis:  The IRS reviewed the pre-amendment Informant Awards Program to understand its strengths and weaknesses, the existing program controls, and the status of improvement initiatives.  This included a comprehensive study of regulations, policies and guidelines, prior internal and external oversight reports, and case files on recent award decisions.  The Director of the Whistleblower Office and staff met with IRS employees familiar with the Informant Awards Program, including those involved in receipt and analysis of whistleblower submissions, those who conduct or supervise examinations and investigations based on those submissions, and those involved in award decisions and payment.  They also met with attorneys who represent whistleblowers to discuss individual cases as well as broader program perspectives.  This analysis, which is continuing, has influenced decisions on initial case processing protocols as well as longer term program design priorities.

Program Design:  A top priority for the whistleblower program was the intake and analysis of whistleblower submissions.  This aspect of the program required immediate attention because whistleblower submissions began arriving almost immediately after section 7623(b) was enacted.

Working with the IRS Operating Divisions, the Criminal Investigation Division, and the Office of Chief Counsel, the Whistleblower Office has designed an intake process that includes initial review by Whistleblower Office staff and an evaluation by Operating Division subject matter experts.  The Operating Division subject matter experts determine whether the information submitted by the whistleblower warrants initiation of an examination of the issues reported.  Each IRS Operating Division also has a Division Counsel.  Division Counsel attorneys provide advice on technical tax issues as well as any legal issues that could limit the IRS's ability to use some or all of the information provided by the whistleblower.  For example, documents submitted by a whistleblower are sometimes marked "attorney-client privileged."  A Division Counsel attorney would need to determine whether the asserted privilege may legitimately be claimed for the document and whether an exception to that privilege may apply.  In addition, as part of the subject matter expert's analysis, the whistleblower may be asked to meet to discuss the submission, to ensure that the IRS fully understands the issues raised and to ensure that all relevant information has been submitted.

Program guidance:  Notice 2008-4[7] provided initial guidance on how to submit information to the IRS, and was accompanied by a revision to Form 211 "Application for Award for Original Information.[8]"   The Notice addressed the most pressing guidance requirements—how to submit information, and the criteria that will be applied to determine whether the information qualifies under the Act.  It includes the requirement that the information be submitted by an individual, under penalty of perjury, and it defines ineligible submissions.  A submission may be ineligible because the person

---

[7] http://www.irs.gov/newsroom/article/0,,id=176632,00.html

[8]   http://www.irs.gov/pub/irs-pdf/f211.pdf

6/24/2008

00005

submitting it is disqualified (e.g., a Federal employee who learned of the tax noncompliance in the course of performing his/her duties), or because the information does not provide a basis for IRS action. The latter category includes information that is speculative or is already known to the IRS. The Notice also described information that should be included by the whistleblower that will be needed to evaluate the submission.

The Form 211 revision incorporates the provisions of the law and the Notice, and is intended to help whistleblowers present information that is essential to evaluate whether a submission meets the requirements of section 7623(b). One change to the form, a new address for submissions, reflects an important change in processing whistleblower information. The Form 211 is now sent to the Whistleblower Office, where all submissions are reviewed to determine whether they appear to qualify under section 7623(b). Those that do not appear to qualify are sent to the Informant Claims Examination Unit in Ogden, UT, for processing as potential 7623(a) claims.

The IRS completed a Privacy Impact Assessment and a Privacy Act System of Records Notice for the whistleblower program. Both were essential steps in establishing program controls required by law and regulation.

The IRS adapted an existing correspondence control system as an interim case management system for the Whistleblower Office. Actions to acquire a commercial-off-the-shelf case management system have been taken, with pilot testing scheduled for the third quarter of FY 2008.

The IRS established a working group led by the Whistleblower Office, with representatives from the Operating Divisions, Criminal Investigation Division, and the Office of Chief Counsel. The working group is addressing the detailed steps needed to implement the changes in the law, including updates, revisions or replacements for the regulations, policies, operating procedures, and forms related to whistleblower awards.

Program Operations: Fiscal Year 2007 was a year of significant transition for the whistleblower program. In addition to the substantial changes in the law and the creation of a new Whistleblower Office, the Service continued to implement program changes that started in Fiscal Year 2006. Informant claims operations formerly assigned to five IRS Campuses were consolidated at the Ogden Informant Claims Examination (ICE) unit in FY 2006. Actions to complete the consolidation continued into FY 2007.

By January 31, 2008, the IRS had received 116 whistleblower submissions that each appeared to meet the $2 million of tax, penalties, interest, and additions to tax threshold in section 7623(b), 24 of which alleged more than $10 million. An additional 29 did not include a specific amount[9]. The individuals submitting information to the IRS claimed to have inside knowledge of the transactions they were reporting, often with extensive documentation to support their claims. It is too early to tell how many of these 116 cases will be sustained after examination or investigation by the IRS. However, to put this in context, under the old Informant Award Program only 12 of 227 full paid claims in

---

[9] These numbers reflect submissions received by the Whistleblower Office. Additional submissions were made to other IRS offices prior to the revision of Form 211, which directs that the forms be sent to the Whistleblower Office. The IRS is consolidating information about these other cases in the Whistleblower Office.

6/24/2008

2007 involved collections of more than $2 million, and only 3 involved collections of more than $10 million.

The Whistleblower Office also received a number of requests for status reports on pre-amendment submissions, as well as some requests for reconsideration of decisions on pre-amendment submissions. While the Whistleblower Office had no authority to make decisions on pre-amendment submissions, it made inquiries to determine the status of open cases and to ensure that informant claims policies had been followed in a number of closed cases.

Outreach and Communications: The IRS developed a communications plan to address outreach to both the public and IRS personnel regarding changes in the whistleblower program. The plan includes efforts to identify opportunities for improvement, potential barriers to change, and manage expectations regarding the scope and pace of change. The Whistleblower Office has a page on the IRS intranet to make information available to IRS personnel, and will continue to provide articles for internal newsletters and speakers for professional education events to reach employees who are most likely to deal with a whistleblower case. A dedicated page on the public IRS.GOV website provides a description of the law, links to Notice 2008-4 and Form 211, and other information about what a whistleblower should expect when making a submission. The Whistleblower Office will continue to make presentations to professional groups involved in representation of taxpayers and whistleblowers, both to describe program developments and to obtain outside perspectives on the program.

## Priorities for Fiscal Year 2008

The IRS has four priority initiatives for the whistleblower program in Fiscal Year 2008. The first initiative is to complete a comprehensive revision of IRM provisions relevant to whistleblower awards. The existing IRM guidance was developed to address the discretionary awards program under what is now section 7623(a). The revision will incorporate the changes required as a result of the new law, as well as a re-examination of policies and procedures that were not directly affected but have not been critically examined for some time.

The second initiative is to develop criteria for making determinations on award eligibility and award percentages. Section 7623(b) provides for an award range of 15 percent to 30 percent of collected proceeds, and it provides for two exceptions. While each case must be considered on the specific facts, the criteria will be used to guide the analysis and provide some transparency in the Whistleblower Office decision process.

The third initiative is to continue to reach out to external stakeholders for feedback and recommendations on program development and implementation issues, such as the development of the criteria noted above. This outreach will inform our efforts to develop new regulations for the program, which will be included on the next Department of Treasury priority guidance plan.

The fourth initiative is to conduct pilot testing and then deploy a new case management system. The IRS has identified a commercial-off-the-shelf system that is well suited to the needs of the whistleblower program, and expects delivery and pilot testing in the fourth quarter of FY 2008.

6/24/2008

00007

## Whistleblower Awards Paid

The chart below reflects information on informant claims that the Service has reported to Congress each year. As the successor to the five Campus organizations from prior years, the ICE unit is responsible for processing the payment of all claims under what is now section 7623(a), based on evaluations of the contributions made by informants and a determination of the applicable award percentage.[10] There is no correlation between the year of claim submission and the year when an award is paid, because the IRS must complete an investigation or examination of the underlying tax matter (including any appeal by the taxpayer) and must collect proceeds before it can pay an award. It would be very rare to complete this process in the same year that a claim is submitted. Year-to-year fluctuations in the amount of awards paid and the amount collected are attributable to a small number of large cases closed in 2006 and 2007.

### Receipts and payments, FY 2003-2007

|  | 2003 | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|---|
| **Cases Received** | 4,765 | 5,380 | 2,740 | 4295 | 2751 |
| **Awards Paid** | 190 | 259 | 169 | 220 | 227 |
| **Collections over $2 million** | NA | NA | NA | NA | 12 |
| **Amount of Awards Paid** [11] | $4,057,476 | $4,585,143 | $7,602,685 | $24,184,458 | $13,600,205 |
| **Amounts Collected** | $61,556,175 | $74,130,794 | $93,677,606 | $258,590,435 | $181,784,287 |

---

[10] All of the claims paid in FY 2007 were based on information received prior to December 20, 2006, the date of enactment of Section 406 of the Tax Relief and Health Care Act of 2006. Thus, the applicable award percentages were those established in IRS policy, not the higher percentages set in the new law.

[11] The amount of awards paid includes fully paid awards and partially paid awards. In FY 2007, 35 informants received partial payments totaling $3.2 million.

6/24/2008

00008

## Appendix: Revised 7623 and other provisions of law

TITLE 26 - INTERNAL REVENUE CODE

Subtitle F - Procedure and Administration

CHAPTER 78 - DISCOVERY OF LIABILITY AND ENFORCEMENT OF TITLE

Subchapter B - General Powers and Duties

Sec. 7623. Expenses of detection of underpayments and fraud, etc.

(a) In General- The Secretary, under regulations prescribed by the Secretary, is authorized to pay such sums as he deems necessary for -

(1) detecting underpayments of tax, or

(2) detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same,

in cases where such expenses are not otherwise provided for by law. Any amount payable under the preceding sentence shall be paid from the proceeds of amounts collected by reason of the information provided, and any amount so collected shall be available for such payments.

(b) Awards to Whistleblowers-

(1) IN GENERAL- If the Secretary proceeds with any administrative or judicial action described in subsection (a) based on information brought to the Secretary's attention by an individual, such individual shall, subject to paragraph (2), receive as an award at least 15 percent but not more than 30 percent of the collected proceeds (including penalties, interest, additions to tax, and additional amounts) resulting from the action (including any related actions) or from any settlement in response to such action. The determination of the amount of such award by the Whistleblower Office shall depend upon the extent to which the individual substantially contributed to such action.

(2) AWARD IN CASE OF LESS SUBSTANTIAL CONTRIBUTION-

(A) IN GENERAL- In the event the action described in paragraph (1) is one which the Whistleblower Office determines to be based principally on disclosures of specific allegations (other than information provided by the individual described in paragraph (1)) resulting from a judicial or administrative hearing, from a governmental report, hearing, audit, or investigation, or from the news media, the Whistleblower Office may award such sums as it considers appropriate, but in no case more than 10 percent of the collected proceeds (including penalties, interest, additions to tax, and additional amounts) resulting from the action (including any related actions) or from any settlement in response to such action, taking into account the significance of the individual's information and the role of such individual and any legal representative of such individual in contributing to such action.

(B) NONAPPLICATION OF PARAGRAPH WHERE INDIVIDUAL IS ORIGINAL SOURCE OF INFORMATION- Subparagraph (A) shall not apply if the information resulting in the initiation of the action described in paragraph (1) was originally provided by the individual described in paragraph (1).

6/24/2008

00009

(3) REDUCTION IN OR DENIAL OF AWARD- If the Whistleblower Office determines that the claim for an award under paragraph (1) or (2) is brought by an individual who planned and initiated the actions that led to the underpayment of tax or actions described in subsection (a)(2), then the Whistleblower Office may appropriately reduce such award. If such individual is convicted of criminal conduct arising from the role described in the preceding sentence, the Whistleblower Office shall deny any award.

(4) APPEAL OF AWARD DETERMINATION- Any determination regarding an award under paragraph (1), (2), or (3) may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter).

(5) APPLICATION OF THIS SUBSECTION- This subsection shall apply with respect to any action--

> (A) against any taxpayer, but in the case of any individual, only if such individual's gross income exceeds $200,000 for any taxable year subject to such action, and

> (B) if the tax, penalties, interest, additions to tax, and additional amounts in dispute exceed $2,000,000.

(6) ADDITIONAL RULES-

> (A) NO CONTRACT NECESSARY- No contract with the Internal Revenue Service is necessary for any individual to receive an award under this subsection.

> (B) REPRESENTATION- Any individual described in paragraph (1) or (2) may be represented by counsel.

> (C) SUBMISSION OF INFORMATION- No award may be made under this subsection based on information submitted to the Secretary unless such information is submitted under penalty of perjury.'.

**Other provisions of Section 406 of the Tax Relief and Health Care Act of 2006**

(a)(2) ASSIGNMENT TO SPECIAL TRIAL JUDGES-

> (A) IN GENERAL- Section 7443A(b) (relating to proceedings which may be assigned to special trial judges) is amended by striking `and' at the end of paragraph (5), by redesignating paragraph (6) as paragraph (7), and by inserting after paragraph (5) the following new paragraph:

> > (6) any proceeding under section 7623(b)(4), and'.

> (B) CONFORMING AMENDMENT- Section 7443A(c) is amended by striking `or (5)' and inserting `(5), or (6)'.

(3) DEDUCTION ALLOWED WHETHER OR NOT TAXPAYER ITEMIZES- Subsection (a) of section 62 (relating to general rule defining adjusted gross income) is amended by inserting after paragraph (20) the following new paragraph:

> `(21) ATTORNEYS FEES RELATING TO AWARDS TO WHISTLEBLOWERS- Any deduction allowable under this chapter for attorney fees and court costs paid by, or on behalf of, the taxpayer in connection with any award under section 7623(b) (relating to awards to whistleblowers). The preceding sentence shall not apply to any deduction in excess of the amount includible in the taxpayer's gross income for the taxable year on account of such award.'.

(b) Whistleblower Office-

> (1) IN GENERAL- Not later than the date which is 12 months after the date of the enactment of this Act, the Secretary of the Treasury shall issue guidance for the operation of a whistleblower program to be administered in the Internal Revenue Service by an office to be known as the `Whistleblower Office' which--

– 8 –

6/24/2008

00010

(A) shall at all times operate at the direction of the Commissioner of Internal Revenue and coordinate and consult with other divisions in the Internal Revenue Service as directed by the Commissioner of Internal Revenue,

(B) shall analyze information received from any individual described in section 7623(b) of the Internal Revenue Code of 1986 and either investigate the matter itself or assign it to the appropriate Internal Revenue Service office, and

(C) in its sole discretion, may ask for additional assistance from such individual or any legal representative of such individual.

(2) REQUEST FOR ASSISTANCE- The guidance issued under paragraph (1) shall specify that any assistance requested under paragraph (1)(C) shall be under the direction and control of the Whistleblower Office or the office assigned to investigate the matter under paragraph (1)(A). No individual or legal representative whose assistance is so requested may by reason of such request represent himself or herself as an employee of the Federal Government.

(c) Report by Secretary- The Secretary of the Treasury shall each year conduct a study and report to Congress on the use of section 7623 of the Internal Revenue Code of 1986, including--

(1) an analysis of the use of such section during the preceding year and the results of such use, and

(2) any legislative or administrative recommendations regarding the provisions of such section and its application.

(d) Effective Date- The amendments made by subsection (a) shall apply to information provided on or after the date of the enactment of this Act.

6/24/2008

00011

# U.S. Supplemental Authority

# B

Westlaw.

PL 109-432, 2006 HR 6111                                                                    Page 1
PL 109-432, December 20, 2006, 120 Stat 2922
**(Cite as: 120 Stat 2922)**

UNITED STATES PUBLIC LAWS
**109th Congress - Second Session**
**Convening January 7, 2005**

Copr. © 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

Additions and Deletions are not identified in this database.
Vetoed provisions within tabular material are not displayed
PL 109-432 (HR 6111)
December 20, 2006
TAX RELIEF AND HEALTH CARE ACT OF 2006

An Act To amend the Internal Revenue Code of 1986 to extend expiring provisions, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States
of America in Congress assembled,

SECTION 1. SHORT TITLE, ETC.

<< 26 USCA § 1 NOTE >>

(a) SHORT TITLE.--This Act may be cited as the "Tax Relief and Health Care Act of 2006".

(b) TABLE OF CONTENTS.--The table of contents for this Act is as follows:

Sec. 1. Short title, etc.

DIVISION A--EXTENSION AND EXPANSION OF CERTAIN TAX RELIEF PROVISIONS, AND OTHER
TAX PROVISIONS

Sec. 100. Reference.

TITLE I--EXTENSION AND MODIFICATION OF CERTAIN PROVISIONS

Sec. 101. Deduction for qualified tuition and related expenses.

Sec. 102. Extension and modification of new markets tax credit.

Sec. 103. Election to deduct State and local general sales taxes.

Sec. 104. Extension and modification of research credit.

Sec. 105. Work opportunity tax credit and welfare-to-work credit.

Sec. 106. Election to include combat pay as earned income for purposes of earned income credit.

Sec. 107. Extension and modification of qualified zone academy bonds.

Sec. 108. Above-the-line deduction for certain expenses of elementary and secondary school teachers.

Sec. 109. Extension and expansion of expensing of brownfields remediation costs.

PL 109-432, 2006 HR 6111
PL 109-432, December 20, 2006, 120 Stat 2922
(Cite as: 120 Stat 2922)

TITLE III--HEALTH SAVINGS ACCOUNTS

Sec. 301. Short title.

Sec. 302. FSA and HRA terminations to fund HSAs.

Sec. 303. Repeal of annual deductible limitation on HSA contributions.

Sec. 304. Modification of cost-of-living adjustment.

Sec. 305. Contribution limitation not reduced for part-year coverage.

Sec. 306. Exception to requirement for employers to make comparable health savings account contributions.

Sec. 307. One-time distribution from individual retirement plans to fund HSAs.

TITLE IV--OTHER PROVISIONS

Sec. 401. Deduction allowable with respect to income attributable to domestic production activities in Puerto Rico.

Sec. 402. Credit for prior year minimum tax liability made refundable after period of years.

Sec. 403. Returns required in connection with certain options.

Sec. 404. Partial expensing for advanced mine safety equipment.

Sec. 405. Mine rescue team training tax credit.

Sec. 406. **Whistleblower** reforms.

Sec. 407. Frivolous tax submissions.

Sec. 408. Addition of meningococcal and human papillomavirus vaccines to list of taxable vaccines.

Sec. 409. Clarification of taxation of certain settlement funds made permanent.

Sec. 410. Modification of active business definition under section 355 made permanent.

Sec. 411. Revision of State veterans limit made permanent.

Sec. 412. Capital gains treatment for certain self-created musical works made permanent.

Sec. 413. Reduction in minimum vessel tonnage which qualifies for tonnage tax made permanent.

Sec. 414. Modification of special arbitrage rule for certain funds made permanent.

Sec. 415. Great Lakes domestic shipping to not disqualify vessel from tonnage tax.

Sec. 416. Use of qualified mortgage bonds to finance residences for veterans without regard to first-time homebuyer requirement.

Sec. 417. Exclusion of gain from sale of a principal residence by certain employees of the intelligence community.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

PL 109-432, 2006 HR 6111

PL 109-432, December 20, 2006, 120 Stat 2922

**(Cite as: 120 Stat 2922)**

SEC. 406. **WHISTLEBLOWER** REFORMS.

(a) AWARDS TO **WHISTLEBLOWERS.**--

(1) IN GENERAL.--Section 7623 (relating to expenses of detection of underpayments and fraud, etc.) is amended--

<< 26 USCA § 7623 >>

(A) by striking "the secretary" and inserting "(a) IN GENERAL.--The Secretary",

<< 26 USCA § 7623 >>

(B) by striking "and" at the end of paragraph (1) and inserting "or",

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

PL 109-432, 2006 HR 6111                                                                                    Page 55
PL 109-432, December 20, 2006, 120 Stat 2922
(Cite as: 120 Stat 2922)

<< 26 USCA § 7623 >>

(C) by striking "(other than interest)", and

<< 26 USCA § 7623 >>

(D) by adding at the end the following new subsection:

"(b) AWARDS TO **WHISTLEBLOWERS.--**

"(1) IN GENERAL.--If the Secretary proceeds with any administrative or judicial action described in subsection (a) based on information brought to the Secretary's attention by an individual, such individual shall, subject to paragraph (2), receive as an award at least 15 percent but not more than 30 percent of the collected proceeds (including penalties, interest, additions to tax, and additional amounts) resulting from the action (including any related actions) or from any settlement in response to such action. The determination of the amount of such award by the **Whistleblower** Office shall depend upon the extent to which the individual substantially contributed to such action.

"(2) AWARD IN CASE OF LESS SUBSTANTIAL CONTRIBUTION.--

"(A) IN GENERAL.--In the event the action described in paragraph (1) is one which the **Whistleblower** Office determines to be based principally on disclosures of specific allegations (other than information provided by the individual described in paragraph (1)) resulting from a judicial or administrative hearing, from a governmental report, hearing, audit, or investigation, or from the news media, the **Whistleblower** Office may award such sums as it considers appropriate, but in no case more than 10 percent of the collected proceeds (including penalties, interest, additions to tax, and additional amounts) resulting from the action (including any related actions) or from any settlement in response to such action, taking into account the significance of the individual's information and the role of such individual and any legal representative of such individual in contributing to such action.

"(B) NONAPPLICATION OF PARAGRAPH WHERE INDIVIDUAL IS ORIGINAL SOURCE OF INFORMATION.--Subparagraph (A) shall not apply if the information resulting in the initiation of the action described in paragraph (1) was originally provided by the individual described in paragraph (1).

"(3) REDUCTION IN OR DENIAL OF AWARD.--If the **Whistleblower** Office determines that the claim for an award under paragraph (1) or (2) is brought by an individual who planned **\*2959** and initiated the actions that led to the underpayment of tax or actions described in subsection (a)(2), then the **Whistleblower** Office may appropriately reduce such award. If such individual is convicted of criminal conduct arising from the role described in the preceding sentence, the **Whistleblower** Office shall deny any award.

"(4) APPEAL OF AWARD DETERMINATION.--Any determination regarding an award under paragraph (1), (2), or (3) may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter).

"(5) APPLICATION OF THIS SUBSECTION.--This subsection shall apply with respect to any action--

"(A) against any taxpayer, but in the case of any individual, only if such individual's gross income exceeds $200,000 for any taxable year subject to such action, and

"(B) if the tax, penalties, interest, additions to tax, and additional amounts in dispute exceed $2,000,000.

"(6) ADDITIONAL RULES.--

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

PL 109-432, 2006 HR 6111                                                     Page 56
PL 109-432, December 20, 2006, 120 Stat 2922
(Cite as: 120 Stat 2922)

"(A) NO CONTRACT NECESSARY.--No contract with the Internal Revenue Service is necessary for any individual to receive an award under this subsection.

"(B) REPRESENTATION.--Any individual described in paragraph (1) or (2) may be represented by counsel.

"(C) SUBMISSION OF INFORMATION.--No award may be made under this subsection based on information submitted to the Secretary unless such information is submitted under penalty of perjury.".

(2) ASSIGNMENT TO SPECIAL TRIAL JUDGES.--

<< 26 USCA § 7443A >>

   (A) IN GENERAL.--Section 7443A(b) (relating to proceedings which may be assigned to special trial judges) is amended by striking "and" at the end of paragraph (5), by redesignating paragraph (6) as paragraph (7), and by inserting after paragraph (5) the following new paragraph:

"(6) any proceeding under section 7623(b)(4), and".

<< 26 USCA § 7443A >>

   (B) CONFORMING AMENDMENT.--Section 7443A(c) is amended by striking "or (5)" and inserting "(5), or (6)".

<< 26 USCA § 62 >>

(3) DEDUCTION ALLOWED WHETHER OR NOT TAXPAYER ITEMIZES.--Subsection (a) of section 62 (relating to general rule defining adjusted gross income) is amended by inserting after paragraph (20) the following new paragraph:

"(21) ATTORNEYS FEES RELATING TO AWARDS TO WHISTLEBLOWERS.--Any deduction allowable under this chapter for attorney fees and court costs paid by, or on behalf of, the taxpayer in connection with any award under section 7623(b) (relating to awards to whistleblowers). The preceding sentence shall not apply to any deduction in excess of the amount includible in the taxpayer's gross income for the taxable year on account of such award.".

<< 26 USCA § 7623 NOTE >>

(b) WHISTLEBLOWER OFFICE.--

(1) IN GENERAL.--Not later than the date which is 12 months after the date of the enactment of this Act, the Secretary of the Treasury shall issue guidance for the operation of a whistleblower program to be administered in the Internal Revenue Service by an office to be known as the "Whistleblower Office" which--

*2960 (A) shall at all times operate at the direction of the Commissioner of Internal Revenue and coordinate and consult with other divisions in the Internal Revenue Service as directed by the Commissioner of Internal Revenue,

   (B) shall analyze information received from any individual described in section 7623(b) of the Internal Revenue Code of 1986 and either investigate the matter itself or assign it to the appropriate Internal Revenue Service office, and

   (C) in its sole discretion, may ask for additional assistance from such individual or any legal representative of such individual.

(2) REQUEST FOR ASSISTANCE.--The guidance issued under paragraph (1) shall specify that any assistance requested under paragraph (1)(C) shall be under the direction and control of the Whistleblower Office or the office assigned to investigate the matter under paragraph (1)(A). No individual or legal representative whose assistance is so requested may

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

PL 109-432, 2006 HR 6111
PL 109-432, December 20, 2006, 120 Stat 2922
**(Cite as: 120 Stat 2922)**

by reason of such request represent himself or herself as an employee of the Federal Government.

<< 26 USCA § 7623 NOTE >>

(c) REPORT BY SECRETARY.--The Secretary of the Treasury shall each year conduct a study and report to Congress on the use of section 7623 of the Internal Revenue Code of 1986, including--

(1) an analysis of the use of such section during the preceding year and the results of such use, and

(2) any legislative or administrative recommendations regarding the provisions of such section and its application.

<< 26 USCA § 62 NOTE >>

(d) EFFECTIVE DATE.--The amendments made by subsection (a) shall apply to information provided on or after the date of the enactment of this Act.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

# U.S. Supplemental Authority

# C

July 21, 2008

Control No: LMSB-4-0508-033
Impacted IRM: 25.2.2

MEMORANDUM FOR ALL LMSB INDUSTRY DIRECTORS
                                DIRECTOR, FIELD SPECIALISTS
                                DEPUTY COMMISSIONER (INTERNATIONAL)

FROM:                 Frank Y. Ng */s/ Frank Y. Ng*
                      Commissioner, Large and Mid-Size Business Division

SUBJECT:         Whistleblower/Informant Cases and Subject
                      Matter Experts

IRC section 7623 was amended in December 2006, to encourage whistleblowers to provide the IRS with information regarding significant alleged tax noncompliance. As a result of this new legislation, there has been a large increase in the number and quality of informant claims for award on LMSB cases.

As of January 2008, all Applications for Award for Original Information (Forms 211) must be filed with the Whistleblower Office (WO). The attached 3-step flowchart which outlines a process for analyzing informant information and disseminating it to the field has been approved by the IRS Enforcement Committee. This 3-step process is only used for claims determined by the WO to meet the dollar thresholds of IRC section 7623(b). Section 7623(a) claims will continue to be processed by the Ogden Informant Claims Examiner unit and may be sent directly to the field.

Step 1 tracks the initial receipt of information and the initial review of the claim from the informant. The WO is primarily responsible for the activities occurring in Step 1.

Once the initial review by the WO is complete, Step 2 requires the WO to send the informant information to a Subject Matter Expert (SME) in each Business Operating Division. For LMSB, an SME has been established in each Industry, Field Specialists, and International.

The SME, with Division Counsel support, will evaluate the information provided by informants to determine its merit and what action should be taken. The SME does not

2

have to be a subject matter expert on the technical issues outlined in the informant's claim, but should have a technical tax background and some knowledge of evidentiary concerns.

The SME serves to insulate the audit team from direct contact with the whistleblower and must ensure the audit team does not receive "tainted" information. Tainted information may include documents that are subject to privilege or were illegally obtained by the informant. In addition, the SME will need to adhere to the limitations on contacts with informants who are current employees of the taxpayer or taxpayer representatives. These limitations are often referred to as the "one-bite" and the "no-bite" rules and are addressed in the attached Chief Counsel Notice 2008-011. Because evidentiary concerns can result from information obtained from any informant, the SME should seek Division Counsel assistance with the legal issues surrounding evidence obtained from informants including but not limited to the "one-bite" and "no-bite" rules discussed in Chief Counsel Notice 2008-011.

If informant information is tainted, the SME and anyone who reviews the tainted information will not be able to participate in the civil examination after the information is passed on to the audit team. For internal control purposes, anyone who views the informant information should not participate in the examination. Until the activities in Step 2 are completed and a decision regarding what information, if any, can be sent to the audit team, interaction between personnel involved in Step 2 and the audit team should be limited and coordinated with Division Counsel. Contact with the audit team could compromise issues and adjustments that the team is currently evaluating.

The SME, with support from Division Counsel, has a number of other responsibilities including:

- Ensuring the Form 211 is complete and accurate. If not, questions can be raised to the WO Analyst who conducted the preliminary review of the Form 211.
- Determining if the taxpayer is under audit. If the taxpayer is not under audit, and the SME determines that the claim should be sent to the field, then the SME may need to work with the Industry PSP to secure a tax return(s) for analysis and potential assignment.
- Reviewing and evaluating the information to determine whether there is an examination issue worthy of pursuing.
- Determining if the audit team has already identified the issue or if the information could help make the development of an existing issue more efficient or more complete. If the issue has been identified, determine when and how the team identified it. To accomplish this, the SME may need to contact the audit team. It is very important that the SME does not provide any information to the audit team and that the SME documents all action on the claim. Contact with the audit team should be coordinated with the LMSB Division Counsel Fraud/Whistleblower Coordinator. Information about the audit status and issues should flow from the

3

audit team to the SME and not vice versa. For example, the SME may ask the audit team for its audit plan and risk analysis, including any potential issues not included in the audit plan.

- Obtaining additional technical experts, if necessary, to assist in the evaluation of the informant information. These experts, who may be technical advisors, field specialists, examiners, or managers, will not be able to participate in the examination if the information they review is "tainted." Tainted information includes, but is not limited to information that is privileged, illegally obtained by the whistleblower, or information obtained by the government in a non-passive manner. Therefore, SMEs should use caution in seeking assistance from other Service personnel and avoid seeking assistance from anyone with line authority over the audit.

- Identifying potential legal issues in developing the issue(s) associated with the claim.

- Interviewing the whistleblower to clarify information submitted, identify additional evidence or information in their possession or known to them[1], and identifying the actual relationship between the informant and the taxpayer. The results of the debriefing should be documented in writing and any new information provided must be evaluated for potential legal issues (taint or privilege).

- Determining if the whistleblower is subject to the "one bite" rule discussed in CC-2008-11. If so, prior to any contact with the whistleblower, Counsel should be contacted to discuss how to proceed. If the whistleblower is subject to the "one bite" rule, prior to the interview, the whistleblower should be advised that the interview will be their only opportunity to provide information or documentation to the Service regarding any claim for award. If there is a need to conduct follow-up contacts with the whistleblower, Counsel should be consulted and decisions to have any additional contacts will be elevated. If the whistleblower is not subject to the "one bite" rule then additional contacts should be carefully considered ensuring that the Service is not encouraging activities that are prohibited.

- Instructing whistleblowers and their representatives to contact the WO if they are interested in information regarding the status of their claims. The SME should refer the whistleblower or the representative to the WO Analyst handling the claim.

- Documenting the actions taken by the SME and Counsel, and any additional documentation obtained during Step 2 and 3 of the process.

- Determining whether to reject the informant claim. If rejected, the SME will complete Form 11369, Evaluation Report on Claim for Award, obtain the Executive Assistant's review and approval, and close the claim to the WO. The Form 211, informant information, activity logs, workpapers, interview notes, and additional information secured and used in making this determination should be returned to the WO Analyst. The WO will close the claim and notify the whistleblower. Examples of when to reject a claim may include, but are not

---

[1] SME interviews with the whistleblower are subject to the limitations contained in Chief Counsel Notice 2008-011.

4

limited to; 1) the issue has already been identified by the audit team and information provides no additional leads; 2) the issue has already been identified by the audit team and the audit team determined not to pursue it; 3) information is not credible; and 4) the claim results from information that is subject to privilege that was not waived by the taxpayer.

- Determining whether to accept the informant information.  If there are no limitations on the use of the information, the claim and all information is referred to an audit team for case development.  Field personnel should be advised never to contact a whistleblower that is a current employee or subject to the "one-bite" rule.  Further, if the audit team believes that additional consultation with a whistleblower would be helpful, the audit team should contact the SME for coordination.  Communications between the SME and the audit team should be limited to ensure the integrity of the examination and "tainted" information is not shared with the audit team.  For additional information, the SME can refer field employees to the Informant Claim Analyst in PQAS.

- If the SME and Division Counsel identify limitations on the use of the information, Division Counsel will draft a risk analysis memorandum that will be elevated within the Office of Chief Counsel for consideration as identified in Step 3 of the flowchart.

- The SME should monitor the status of cases that are sent to the field as periodic updates may be required for the LMSB Commissioner.

In Step 3, Counsel and the SME will make a recommendation to the Industry Director on the legal issues and risks associated with the informant information.  The Industry Director has been designated as the Senior Operating Division decision maker and will decide whether and how to proceed with the case.

Occasionally, a Form 211 alleges noncompliance by more than one taxpayer regarding the same issue.  If these taxpayers fall under the jurisdiction of more than one Industry, the WO Analyst will determine which Industry is most affected and will send the claim to that Industry.  The WO Analyst should consult with all of the impacted Industries prior to assigning the claim to ensure the claim is handled in the most efficient manner.  The SME receiving the claim needs to coordinate with the SME(s) from the other Industries and Field Specialists early in the evaluation process.  While it will generally be advantageous for only one Industry to perform the analysis required in Step 2, the information must be shared with the other Industries if it is determined to have value so it can be distributed to the impacted examinations.  Subsequent coordination amongst the SMEs may be required to ensure consistency.

Further details on the receipt and evaluation of informant information are contained in the attached flowchart.  Additional guidance on this process, including a briefing with the SMEs, is forthcoming.  Bi-weekly conference calls with the SMEs and Counsel to

5

discuss this process and any concerns have already been scheduled.  Please see the Informant Claim website for additional information on this process: http://lmsb.irs.gov/hq/pqa/Post-filing/Informants_Claims.asp

If you have any questions or need additional information, please contact me or Senior Manager, Craig Leeker at 860-258-2061.  Members of your staff may contact Team Manager, Amy Liberator at 330-253-7341.

Attachments (3)
1. Receipt of Information and Initial Review
2. Three Step Claim Process Flowchart
3. CC-2008-011

[1] SME Interviews with the whistleblower are subject to the limitations contained in Chief Counsel Notice 2008-011.

**Attachment 1**

Whistleblower Office Flow Chart

**Receipt of Information and Initial Review**

Step 1 describes initial actions by the Whistleblower Office to receive and process Forms 211. As we do the initial administrative steps, we will screen out cases that clearly do not meet 7623(b) criteria (more than $2 million in dispute and, in the case of an individual, more than $200,000 in gross income for at least one year), or other criteria specified by the ODs and CI. Typical cases that would be screened out at this stage include those that do not identify the taxpayer allegedly involved, are obviously speculative, or report relatively minor issues such as a dispute among parents over which one may claim a dependent.

To date, credible cases involving LMSB taxpayers involve allegations of tax noncompliance well in excess of the $2 million threshold. It does not appear that supplemental criteria are needed for LMSB cases.

Cases that pass the administrative screening will be assigned to an analyst, who will research the issues raised by the informant, check IDRS for open examinations or investigations and determine whether the matter should stay in the WO process or should be referred to the Ogden ICE unit for routine processing.

Any cases that do not appear to meet 7623(b) criteria or OD/CI supplemental criteria will be forwarded to the Ogden Campus ICE unit for routine processing. These "routine" cases, whether identified in the initial administrative screening or by the analyst, are not discarded. "Routine processing" includes recording claim information, a classification review and referral for field investigation, or examination of cases clearing the classification hurdle. Ogden ICE will handle interactions with informants on these cases.

For cases that stay in the WO process, the analyst will monitor the case until final resolution of the tax case and a determination on the informant award. Step 1 in the WO process is completed when the case is reviewed for fraud potential and possible referral to CI. The most common result is that the case is not referred to CI, and it proceeds to Step 2, OD Subject Matter Expert (SME) Analysis.

Step 2 OD SME Analysis is intended to accomplish several objectives. The most basic objective is to evaluate the information provided to determine whether it may materially contribute to identification, development or resolution of taxpayer liability or collection issues. This is, in effect, a classification decision. Another objective is to insulate any resulting examination or investigation from improperly obtained information or other potential "taints" that could compromise the tax case. If the SME reviews information that cannot be used in the examination or investigation, the integrity of the tax case is preserved by withholding that information from the auditor or investigator, and by ensuring that the SME does not advise or supervise the examination or investigation.

The OD SME analysis begins when the case is forwarded to a designated OD SME by the analyst. The OD SME will consult with OD Counsel to identify any potential legal

issues to be wary of in developing the issues presented by the informant, and may decide to obtain additional subject matter expertise for a team analysis of the matter.

2

The initial legal advice should address possible limitations on interactions with the informant, as may be the case if the informant is a tax professional seeking to report a client, or is a current employee of the taxpayer.

- The substantive analysis by the OD SME should be tailored to the nature of the information provided. A general list of relevant lines of inquiry appears on the flowchart. There is a strong presumption that the informant will be debriefed. The informant may have additional information that he/she did not recognize as relevant. Debriefings will include instructions to the informant, comparable to those used by CI, which warn the informant not to violate the law or engage in acts that the Service would be precluded from doing.

- The OD SME analysis may or may not involve continuing OD Counsel support, depending on the issues raised in the particular case. That support could be on a substantive tax issue, or on the procedural issues involved in gathering information from the informant. If there are potential issues related to the use of any of the information offered by the informant, the SME analysis and interaction with the informant must include complete factual development of those issues (What was the relationship between the informant and the taxpayer? How did the informant obtain the information? What steps did the taxpayer take to protect the possibly privileged information from disclosure? What facts may support the informant's belief that the crime or fraud exception applies? etc.)

- At the end of Step 2, the OD SME makes a determination regarding the potential return to the Service if action is taken to pursue the lead offered by the informant.

  - If the lead does not appear productive, the SME reports that conclusion to the WO analyst, who will close the case and notify the informant.

  - If the lead appears to be productive, OD Counsel is given the opportunity to identify potential legal limitations on the use of the information. If there are no legal limitations, the case is forwarded for examination, and the WO analyst monitors case status until the examination is resolved. If the OD Counsel identifies potential legal limitations on use of information, he/she drafts a risk analysis and the case proceeds to Step 3.

Cases that reach Step 3 are those with examination potential and potential legal limitations on the use of information provided by the informant. There is limited case law directly applicable to informant cases in civil examinations, and the law on criminal cases emphasizes the importance of analysis of the specific facts and circumstances presented. Thus, the factual development in Step 2 is an essential prerequisite to the legal risk analysis outlined in Step 3, as well as the business decision as to whether the risks of acting on the information are outweighed by the potential return (and the potential risk of not acting).

00027



Attachment 2 - Three Step Claim Process
Receipt of Information and Initial Review
Step 1

00028

# Operating Division's Subject Matter Expert's Analysis
## Step 2



**Claim from Step 1**

WO Staff sends Case to OD's Subject Matter Expert (SME)

OD's SME consults with Counsel on scope and process for case development

OD's SME develops case for analysis, with OD Counsel and additional OD expert support as needed

OD's SME defines scope of Whistleblower's debriefing based on initial analysis and OD Counsel advice

OD's SME, with OD Counsel support as needed, debriefs Whistleblower to clarify submission and obtain any supporting evidence not already provided (special rules for current employees)

OD's SME determines whether exam team use of Whistleblower information may materially contribute to identification, development or resolution of taxpayer liability or collection issues.

**Non-exclusive list of questions for SME -**
Is the taxpayer currently under audit?
Does the Whistleblower offer information that may be relevant to exam issues (past, current or prospective)?
Does the audit team have the information from another source?
Is the information timely?  Even if dated information, could it help focus on similar conduct in current tax years?

**Non-exclusive list of questions for OD Counsel -**
Are there any potential limitations on interaction with the Whistleblower (tax professional, current employee)?
Are there any potential limitations on use of specific information provided or offered by the Whistleblower (privileged, confidential, etc.)?

**Consulting with Counsel -** This will be with the designated Fraud/Informant Counsel Coordinator or his/her designee for each Industry

**No** → Return to WO with Form 11369 so they can notify Informant

**Yes** → OD Counsel identifies potential limitations on use of information

**No** → Case goes to Exam WO analyst monitors case development

**Yes** → OD Counsel drafts risk analysis

**Go to Step 3**

00029

**Risk Analysis
Step 3**



HQ Chief counsel reviews OD Counsel Risk Analysis

Are there legal issues/ risks?

**Yes** →

Senior OD decision maker (Industry Director) decides whether to proceed.

**No** →

Return case to WO with Form 11369 so they can Notify Informant

**No** →

**Yes** →

Case goes to Exam
WO Analyst monitors case development

# U.S. Supplemental Authority

# D



**LARGE AND MID-SIZE
BUSINESS DIVISION**

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

December 3, 2008

CONTROL NUMBER: LMSB-4-1108-052
IMPACTED IRM: 25.2.2

MEMORANDUM FOR ALL LMSB INDUSTRY DIRECTORS
DIRECTOR, FIELD SPECIALISTS
ALL LMSB HEADQUARTERS DIRECTORS

FROM:            Robert L. Trujillo /s/ *Robert L. Trujillo*
                 Director, Planning, Quality, Analysis, and Support

SUBJECT:         Whistleblower/Informant Claims for Award

IRC section 7623 was amended in December 2006, to encourage whistleblowers to
provide the IRS with information regarding significant alleged tax noncompliance.  The
new law increased the amount of the award a whistleblower can receive and allows the
whistleblower to appeal award determinations in Tax Court.  As a result of this new
legislation, there has been a large increase in the number and quality of whistleblower
claims for award on LMSB cases.  These claims need to be carefully reviewed.

A whistleblower claim must satisfy several requirements to be considered for a
mandatory award under section 7623(b).  Under section 7623(b), the whistleblower
claim must:

- relate to a tax noncompliance matter in which the tax, penalties, interest,
  additions to tax and additional amounts in dispute exceed $2,000,000;

- relate to a taxpayer, and in the case of an individual taxpayer, one whose gross
  income exceeds $200,000 for at least one of the tax years in question; and

- substantially contribute to a decision to take administrative or judicial action that
  results in the collection of tax, penalties, interest, additions to tax and additional
  amounts.

If these requirements are not met, the matter may still be considered for an award under
the pre-Act discretionary authority (what is now section 7623(a)).

2

**How a Whistleblower Files a Claim**

To file a claim for an award, a whistleblower must file a Form 211, Application for Award for Original Information. The instructions regarding filing a claim can be found in Notice 2008-4. The Form 211 must be filed with the IRS Whistleblower Office. LMSB personnel should not accept information directly from a whistleblower, a whistleblower's representative, or Criminal Investigation. If any of these parties attempt to supply information to LMSB personnel, they should be advised of Notice 2008-4 and the requirement to file a Form 211 with the Whistleblower Office. Accepting such information directly from a whistleblower could jeopardize the audit/potential audit and any related adjustments.

Form 211 should not be confused with Form 3949A, Information Referral. Individuals use Form 3949A to report suspected tax fraud if they are not seeking an award. If a manager or examiner receives a Form 3949A without a Form 211, it is not a claim for award under section 7623 and the special procedures discussed in this memo do not apply. However, if the Form 3949A in any way indicates that the individual is interested in receiving an award, LMSB personnel should contact the LMSB Informant Claim Coordinator immediately. The information supplied should not be reviewed further and should not be utilized during the examination. The Informant Claims Coordinator will secure the information and forward it to the Whistleblower Office to contact the individual about whether he/she intends to file a Form 211 and seek an award. If the Whistleblower Office's request for a Form 211 is not responded to within 45 days, the information will be returned to the examiner. If a Form 211 is filed, then it will be processed as described below.

**Whistleblower Information Assigned to the Field**

If the claim meets the section 7623(b) criteria noted above, the Whistleblower Office sends the information to the appropriate Industry office, Field Specialists, or Deputy Commissioner (International). A designated Industry Analyst (Subject Matter Expert or SME) and Division Counsel will review the information for audit potential. They will also consider any legal issues or limitations associated with using the information (e.g. privileges) and communicating with the whistleblower. After this review and a possible interview with the whistleblower, they will make a determination whether or not to accept the claim for further consideration. If the claim is not accepted for further consideration, a Form 11369, Confidential Evaluation Report on Claim for Award, will be completed and all of the information will be sent back to the Whistleblower Office analyst assigned to the claim. If the claim is accepted for further consideration, the Form 211 and any other information, as appropriate, will be sent to the field for use in the examination.

The SME serves to insulate the audit team from direct contact with the whistleblower and protects the team from seeing certain whistleblower information that could compromise the tax case. The integrity of the examination is preserved by the SME withholding certain information from the audit team and by ensuring anyone who sees such information is not advising, supervising, or involved in the examination.

3

The Whistleblower Office will send claims that do not meet the section 7623(b) criteria to the Ogden Informant Claims Examiner Unit (ICE) for classification. Any section 7623(a) claim that is accepted by the LMSB classifier in Ogden will be sent to the Industry SME for further evaluation. If the claim is accepted by the SME, it will be sent to the field. If the claim is not accepted, the SME will complete Form 11369 and close the award claim file to ICE. The Whistleblower Office and the SME should be contacted immediately if at anytime it is determined that a section 7623(a) claim meets the requirements of section 7623(b).

When an examiner receives whistleblower information from the SME, the examiner should seek Counsel assistance. Generally, the work to conduct an examination is no different from the work performed in other cases, including the development of civil or criminal fraud when applicable. The examiner should not contact the whistleblower without consulting with Counsel and the SME. Contact with a whistleblower does not constitute a Third Party Contact under Section 7602(c)

If a whistleblower or their representative contacts anyone about the status of their claim, no information about the claim or the underlying tax matter should be discussed. To avoid any section 6103 violation or other disclosure concerns, any request regarding the status of a claim should be forwarded to the Whistleblower Office.

**Potential Considerations with Using Whistleblower Information**
There are potential legal issues with using information received from certain whistleblowers. Chief Counsel Notice 2008-11 discusses limitations on contacts with a whistleblower (1) who is a current employee of a taxpayer and who is providing the Service with information regarding the whistleblower's employer that has been obtained in the course of the whistleblower's employment, or (2) who is acting as the taxpayer's representative in an examination or other proceeding pending before the Service. This Notice also addresses the use of privileged information received from whistleblowers.

The SME and Division Counsel will consider these limitations prior to assigning a claim. If the examiner would like to contact the whistleblower, the concurrence of the SME and Counsel must be obtained prior to any contact with the whistleblower. The examiner should have Counsel participate in the whistleblower interview and Counsel should review any additional information secured from the whistleblower. There may be situations where the SME and Counsel will need to make the contact instead of the examiner.

**Protection of Whistleblower's Information**
The identity of persons who furnish information regarding possible tax violations must be protected. All employees must handle such information in strict confidence. Such information must be given special handling to avoid disclosure to anyone other than those employees who have an absolute "need to know". All memoranda of oral interviews with whistleblowers, or any other communications which might, in any way

4

identify whistleblowers, including information provided by the whistleblower, must be sealed and handled in the strictest confidence.

In order to ensure the confidentiality of the whistleblower, it is important that no mention is made of the whistleblower to the taxpayer, in the Revenue Agent Report or in the workpapers. All information related to the whistleblower should be maintained in a whistleblower award claim file which is kept separate from the tax file and other audit workpapers.

It is a longstanding practice of the Service that the identity of a confidential source of information, including a whistleblower, will not be disclosed, except to those officials with a "need to know" in the performance of their official duties. This practice applies whether the request is made under the Freedom of Information Act or in the context of an administrative or judicial proceeding. If anyone outside the Service asks if a whistleblower has provided information impacting the examination, examiners should neither confirm nor deny that a whistleblower is involved in any matter. This response must be provided in all cases because the knowledge that a whistleblower provided information may, in fact, identify the whistleblower.

In developing issues impacted by information from whistleblowers, examiners should develop the issues by seeking independent corroboration of the information provided by the whistleblower. This independently developed information should form the basis for any proposed assessment of liability.

### AIMS ICE Indicator

All tax years for which there is a claim for award should be controlled on AIMS with an ICE indicator. If this indicator is present, page one of an AMDISA will contain "ICE-IND>1". Only the Ogden ICE Unit can establish or remove this indicator. The indicator should be on any claim that is sent to the field. For section 7623(a) claims, the ICE Unit will remove the indicator when they receive the award claim file, Form 11369, and confirm the file is complete. For section 7623(b) claims, the ICE Unit will remove the indicator when instructed by the Whistleblower Office. This will typically be when the Whistleblower Office analyst assigned to the claim confirms the award claim file and Form 11369 is complete. **The return can not be closed to status 80 or above until the indicator is removed.**

If the whistleblower information causes an expansion of the audit to other years or taxpayers, examiners should advise the Ogden ICE unit to establish the indicator for these additional returns. This can be accomplished by contacting Kathleen Kariya at 801-620-2169 or Jerri Ryan at 801-620-2170.

### Award Claim File and Confidential Evaluation Report on Claim for Award

Form 11369 is completed by the field to assess the value of the information supplied by the whistleblower. A Form 11369 is required for each whistleblower claim. As of

5

July 1, 2008, the Whistleblower Office is responsible for determining the award, if any, for all claims (section 7623(a) and (b)). Examiners will no longer make a recommendation on what the award should be. Form 11369 has been updated to reflect these changes. The examiner must thoroughly complete the form, including all necessary attachments and related explanations, so the Whistleblower Office can make the award decision, including the award percentage. Examiners should comment as to the value of the information provided and the extent to which it assisted in the outcome of relevant issue(s). As appropriate, examiners should fill-in sections of the Form 11369 as the case is developed. Filling in the appropriate sections of the Form 11369 contemporaneous with the case development will ensure that the form accurately reflects the facts needed to make an award decision. Examiners should complete the Form 11369, as soon as possible, after actions are taken based on the information provided, or after a decision not to act on the information. In certain instances, this could be before the examination is completed.

To ensure the Whistleblower Office has the necessary information to determine if an award should be paid, any and all information pertaining to the whistleblower should be maintained in a separate award claim file. This file should include all information that may assist the Whistleblower Office in making the award decision, including Form 11369, and the following:

- Copies of the first few pages of the affected tax returns, including Schedule J. This includes any additional tax returns that were examined as a result of the whistleblower information.
- Copy of the computation section of the RAR (Form 4549 and relevant computations) for all returns examined as a result of the whistleblower information.
- Copy of the RAR sections that reflect the issues impacted by the information provided by the whistleblower.
- Copy of the Special Agents Report, if applicable.
- Copy of the examination plan for issues impacted by the information provided by the whistleblower.
- A schedule of the adjustments impacted by the information provided by the whistleblower and the effect of these adjustments for each year included in the RAR for taxable income, credits, and net tax liability.
- Copy of the information provided by the Industry Subject Matter Expert and Counsel. This includes any advice, direction or guidance that was received.
- The information provided by the whistleblower or subsequently obtained from the whistleblower.
- Asset information for collection if there is a need for a jeopardy assessment.

The entire award claim file should be placed in a sealed envelope, or similar protection, and marked "For Whistleblower Office/ICE Only". If the claim is a section 7623(a) claim,

6

the file should be sent to the ICE Unit.  If the claim is a section 7623(b) claim, the file should be sent to the Whistleblower Office analyst assigned to the claim.

To ensure the ICE indicator is removed timely and the tax case can close when received in Centralized Case Processing, **it is highly recommended that the award claim file be closed before the tax case is closed from the group.**

**Whistleblower Information Not Utilized**
In some situations, the information provided by the whistleblower will not be utilized. This may be because the information is already in the examiner's possession, the examiner has decided not to examine the subject area, or some other reason.  In these instances, the whistleblower is not entitled to an award.  The examiner should complete the Form 11369 as soon as a decision can be made which is typically before the conclusion of the examination.  The examiner should thoroughly explain why the information is not being utilized.  The form and award claim file, including the information noted above, should be forwarded to ICE or the Whistleblower Office analyst as soon as this decision is made.

If the Whistleblower Office has any questions about the Form 11369 or the award claim file they will direct these inquiries to the PQAS Whistleblower Program Analyst, Brad Anderson.

**Resources**
For additional information on the Whistleblower program, including contact information for the LMSB Whistleblower Coordinator, Industry SMEs, and Counsel, please refer to the PQAS Whistleblower website at http://lmsb.irs.gov/hq/pqa/Post-filing/Informants_Claims.asp

If you have questions, please contact Team Manager Amy Liberator at (330) 253-7341. Field personnel may contact Senior Program Analyst/LMSB Whistleblower Coordinator Brad Anderson at (309) 662-5782, extension 113.