GEORGE S. CARDONA
Acting United States Attorney
SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division
ANDREW T. PRIBE (CA SBN: 254904)
Assistant United States Attorney
    300 N. Los Angeles Street
    Federal Building, Room 7211
    Los Angeles, California 90012
    Telephone: (213) 894-6551
    Facsimile: (213) 894-0115
    E-mail: andrew.t.pribe@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No.: SACV08-668 JVS(MLGx) |
|     Plaintiff, | ) | |
| vs. | ) | Declaration of Andrew Pribe |
| COMCO MANAGEMENT CORPORATION; CONCORD FUNDING CO., LLC; METCO MANAGEMENT CORPORATION; MONEX CREDIT CO.; MONEX DEPOSIT CO.; NEWPORT SERVICE CORP.; and PCCE, Inc., | ) | |
|     Defendants. | ) | |

Andrew Pribe declares:

1.     I am an Assistant United States Attorney with the United States Attorney's Office for the Central District of California.

2.     I am lead trial counsel for the United States in this case.

3.     On Monday, April 27, 2009, Robert Stientjes called me.

4.     This telephone call was the first communication I had with Stientjes.

5.     During the course of the telephone call on April 27, 2009, Stientjes made the following statements:

    —     Stientjes represented a confidential informant who was at Monex.

1       —    The person wanted to remain anonymous.

2       —    The person still had connections at Monex.

3       —    The person was concerned about two things: (1) protecting his

4             confidentiality as long as possible; and (2) being guaranteed into the

5             IRS Whistleblower Program.

6       —    Stientjes was going to call an individual named Robert Gardner at the

7             IRS Whistleblower Office on the following day.

8       —    Gardner, in turn, may call me.

9       —    If the second condition was not met, Stientjes's client would not

10             provide information.

11      6.    During the course of the April 27, 2009, conversation, I asked

12 Stientjes if the individual had documents.  Stientjes said yes.

13      7.    At that point the conversation ended and I thanked Stientjes for

14 calling.

15      8.    On Monday, April 27, 2009, I received an e-mail from Stientjes

16 which is attached as exhibit 1.

17      9.    On Thursday, April 30, 2009, I received an e-mail from Stientjes

18 which is attached as exhibit 2.

19      10.    On Thursday, April 30, 2009, I responded to Stientjes's e-mail.  A

20 copy of my response is attached as exhibit 3.

21      11.    On Tuesday, May 5, 2009, I received a voice mail message from

22 Stientjes saying that he wanted to follow up on the e-mail he had sent me.  He said

23 that he is learning more all the time and that he wanted to pass some things on to

24 me.  He asked me to call him on the following day.

25      12.    On Thursday, May 7, 2009, I called Al Gibson at the IRS

26 Whistleblower Office.  Gibson was very guarded in his discussion with me.  He

27 would not discuss any specific claim or case with me.  But he gave me a broad

28 overview of the operation of the IRS Whistleblower Program and how they

handled claims.

13. On Friday, May 8, 2009, I received a voice mail message from Stientjes saying that he was following up on the e-mail from earlier in the week. He provided me with the number for his direct line.

14. On Friday, May 8, 2009, I sent an e-mail to Stientjes. A copy of that e-mail is attached as exhibit 4.

15. On Friday, May 8, 2009, I received a second voice mail message from Stientjes. He said that he got my e-mail, but that he still wanted to talk, not necessarily about the IRS Whistleblower Program, but about how he was trying to assist the Government on his end.

16. On Friday, May 8, 2009, I received an e-mail with an attached letter from Stientjes, a copy of which is attached as exhibit 5.

17. On Monday, May 11, 2009, I sent an e-mail to Stientjes, a copy of which is attached as exhibit 6.

18. On Monday, May 11, 2009, I received an e-mail from Stientjes, a copy of which is attached as exhibit 7.

19. On Monday, May 11, 2009, I sent an e-mail to Stientjes, a copy of which is attached as exhibit 8.

20. On Tuesday, May 12, 2009, I participated in a telephone conference with Stientjes; Thomas Pliske, his law partner; Thomas Coker, an assistant United States attorney; and Michael "Dan" Smith, an IRS revenue officer.

21. During the course of the May 12, 2009, telephone conference Stientjes and Pliske made the following statements regarding the identity of their client or clients and documents in the client or client's possession, with Stientjes speaking the most:

— Their client or clients would not allow them to provide their names or the number of individuals who were their clients.

— Their client or clients had been on the right side for over 15 years and

1      have been providing information to the IRS and risking hardship,

2      harm, and embarrassment.

3      —   Their client or clients have been reviewing records and providing

4      them to Stientjes and Pliske.

5      —   Their client or clients have records that were ordered destroyed by the

6      Carabinis as well as other voluminous records that will clearly

7      document what went on and a clear plan to avoid payment of taxes,

8      fraudulent conveyances, etc.

9      —   Their client or clients have memos by the Carabinis noting that they

10      are doing things to avoid paying taxes.

11      —   Their client or clients needed a reason to go forward with the IRS.

12      They wanted some assurances that the DOJ and IRS were taking a

13      serious ownership interest in continuing to pursue Monex, in all its

14      forms, even after the suit was won.  They needed this assurance to

15      feel comfortable with exposing themselves to increased risk and

16      hardship as the case progressed.

17      —   Their client or clients also wanted some assurances that their

18      identities would be kept confidential for as long as possible and to the

19      maximum extent possible.

20      22.   During the course of the telephone conference on May 12, 2009, I

21   made the following statements and received the following responses:

22      —   I inquired whether their clients would be available to meet.  Stientjes

23      and Pliske said they were still involved in negotiations with the IRS

24      Whistleblower Office.  But they stated the information could be

25      provided to the DOJ either simultaneously or just after the

26      information had been provided to the IRS Whistleblower Office.  Ten

27      days was mentioned, but not discussed further.

28      —   I said that no attorney-client materials should be provided to me.  I

- 4 -

suggested that if their clients decided to turn any documents over to the IRS Whistleblower Office, any potential attorney-client documents should be flagged for the IRS Whistleblower Office.

— I said that we made no assurances what the DOJ or the IRS would do after judgment was secured. We were focused on the issues in the current suit. Step two (collection) was another issue.

— Regarding their request for confidentiality, I said that I will do what the law requires. I could make no assurances on confidentiality. I discussed issues relating to the confidentiality of confidential informants, disclosure and discovery requirements, and the fact that the Government cannot keep its evidence secret. Stientjes and Pliske noted that some or most of the information they had would lead back to and identify their clients. They gave the example of documents that were ordered to be destroyed.

— I said that the information their clients had should be provided to the DOJ and IRS and that we would listen to and evaluate it. I noted that, in all likelihood, their clients would be swept up with the individuals we would depose and that the information that they had would come out at that time anyway. I noted that their clients were most likely percipient witnesses and would have to provide the information.

23. The telephone conference on May 12, 2009, ended with Stientjes and Pliske stating that they would inform their clients and see where the clients wanted to go from there.

24. On Thursday, May 28, 2009, I sent a letter to Stientjes by e-mail, a copy of which is attached as exhibit 9.

25. From the end of the telephone call on Tuesday, May 12, 2009, to my letter to Stienjes dated May 28, 2009, there was no communication between Stientjes and me.

26.    On Friday, May 29, 2009, I received an e-mail from Stientjes, a copy of which is attached as exhibit 10.

27.    To the best of my recollection, these are the only contacts between Stientjes and me from the time when he first contacted me to May 29, 2009.

28.    The only contact I had with Pliske from April 27, 2009, through May 29, 2009, was the May 12, 2009, telephone call and any e-mails identified above on which he was an additional recipient.

29.    The only contact I had with the IRS Whistleblower Office from April 27, 2009, through May 29, 2009 was the telephone call on May 7, 2009.

30.    At no time from April 27, 2009, through May 29, 2009, did Stientjes represent that his client was then a current employee at any of Defendants.

31.    At no time from April 27, 2009, through May 29, 2009, did Stientjes identify his client.

32.    At no time from April 27, 2009, through May 29, 2009, did I direct Stientjes or his client to send any documents to the IRS Whistleblower Office nor did I direct him not to send any documents to the IRS Whistleblower Office.

33.    I declare under penalty of perjury that the foregoing is true and correct to the best of my recollection.

Dated: *Nov. 17, 2009*

Andrew T. Pribe

Pribe declaration dated Nov. 17, 2009
Exhibit 1

**Pribe, Andrew T. (USACAC)**

| | |
|---|---|
| **From:** | Rob Rewardtax [rob@rewardtax.com] |
| **Sent:** | Monday, April 27, 2009 5:33 PM |
| **To:** | robert.b.gardner@irs.gov |
| **Cc:** | tom@rewardtax.com; Pribe, Andrew T. (USACAC) |
| **Subject:** | New Whistleblower Case |
| **Attachments:** | Complaint.pdf |

TO:   IRS Whistleblower Office

Attn:  Robert Gardner

Dear Bob,

At your earliest convenience, I need to speak to you about a new case that I have.  A brief explanation of the facts is as follows:

Corporation A has an outstanding tax assessment of $378 million arising from a tax shelter/listed transaction.  The assessment stems from a Tax Court case that concluded in 1999.  Corporation A was obviously the big loser.  Before losing the case, the principals of Corporation A "stripped it clean" so that the IRS could collect nothing.  In 2008, the IRS and DOJ initiated a Court case against Corporation A and others to preserve the statute of limitations on collection, reduce the claim to judgment, and determine that there is successor liability.  The name of this collection case is U.S. v. Comco Management Corp., et al., Case No. 8:08-cv-00668 (C.D. Cal. filed June 13, 2008).  The Complaint is attached to this email.  This collection case is currently pending in the district court.

My client acted as an anonymous informant between 1995-1999 in providing information to an IRS revenue officer regarding attempts to avoid collection of tax by the principals of Corporation A.  Based on information and belief, the IRS/DOJ is relying heavily on information provided by my client in the above referenced collection case.  Best of all, my client has lots more information that would be extremely helpful to the IRS/DOJ in the above referenced collection case.  My client can provide original records going back to the early 1990's, which clearly show that successor liability exists and that several defendant corporations are alter egos of Corporation A.  In essence, my client believes he can give additional information, which will make the above-referenced collection case a "slam dunk" for the IRS/DOJ.  As stated above, all information was provided by my client to the IRS/DOJ anonymously between 1995-1999.  The IRS/DOJ does not know the identity of my client, and the IRS/DOJ will not find my client and obtain the additional information on their own.

My client wants to be brought in under the post-December 2006 law.  Without this assurance by the Whistleblower Office, he is not interested in providing further cooperation.  Thus, my client is looking for a contract -- as allowed by IRC s. 7623.  Although you have told me that the Whistleblower Office has not entered into any contracts since the law changed in December 2006, I am hoping that this unique set of circumstances will cause the Whistleblower Office to explore this option.

Please let me know when we can schedule a time to talk about this scenario further.

I am copying Andrew Pribe, the AUSA, who filed the above referenced collection case.  I made contact with Mr. Pribe today.

Robert J. Stientjes
S & P Law Firm LLC
1120 Olivette Executive Parkway
Suite 220
Saint Louis, Missouri 63132
314.743.3292  direct telephone
314.872.3988  main office
314.872.7374  facsimile
314.705.2771  cellular
www.RewardTax.com

IRS Circular 230 Disclosure: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

COPY

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA | Comco Management Corporation; Concord Funding Co., LLC; Metco Management Corporation; Monex Credit Co., et al (See attached copy) |

| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): Los Angeles County | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): Orange County |
|---|---|

| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) ANDREW T. PRIBE, AUSA US Attorney's Office 300 N. Los Angeles St. #7211, Los Angeles, CA 90012 Tel: (213) 894-6551 Fax: (213) 894-0115 | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No  ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Pursuant to 26 U.S.C. Section 7402 and 28 U.S.C. Section 1331,1340 and 1345

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/ PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☑ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s):

FOR OFFICE USE ONLY:  Case Number:  **SACV08-00668 JVS (MLGx)**

CV-71 (07/05)  CIVIL COVER SHEET  Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

VIII(b). RELATED CASES: Have any cases been previously filed that are related to the present case? ☑ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
  ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☑ Check here if the U.S. government, its agencies or employees is a named plaintiff.

Los Angeles County

List the California County, or State if other than California, in which EACH named defendant resides. (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.

Orange County

List the California County, or State if other than California, in which EACH claim arose. (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.

Orange County

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date June 13 2008

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

THOMAS P. O'BRIEN
United States Attorney
SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division
ANDREW T. PRIBE (CA SBN: 254904)
Assistant United States Attorney
　　　300 N. Los Angeles Street
　　　Federal Building, Room 7211
　　　Los Angeles, California 90012
　　　Telephone: (213) 894-6551
　　　Facsimile: (213) 894-0115
　　　E-mail: andrew.t.pribe@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: |
| Plaintiff, | |
| vs. | Complaint to Reduce Federal Income Tax Assessments to Judgment and to Impose Alter Ego, Single Enterprise, Successor-in-Interest, and Transferee Liability. |
| COMCO MANAGEMENT CORPORATION; CONCORD FUNDING CO., LLC; METCO MANAGEMENT CORPORATION; MONEX CREDIT CO.; MONEX DEPOSIT CO.; NEWPORT SERVICE CORP.; and PCCE, Inc., | |
| Defendants. | |

The United States of America, Plaintiff, for its complaint against Comco Management Corporation; Concord Funding Co., LLC; Metco Management Corporation; Monex Credit Co.; Monex Deposit Co.; Newport Service Corp.; and PCCE, Inc., Defendants, states:

*Jurisdiction & Venue*

　　　1.　　This is a civil action to reduce federal tax assessments to judgment and to recover from entities liable for these unpaid federal tax liabilities. This Court has jurisdiction under 26 U.S.C. § 7402 and 28 U.S.C. §§ 1331, 1340, and

- 1 -

Case 8:08-cv-00668-JVS-RNB   Document 62   Filed 11/17/09   Page 13 of 60   Page ID
#:1381
Case 8:08-cv-00668-JVS-MLG   Document 1   Filed 06/13/2008   Page 4 of 18

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

### SACV08- 668 JVS (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

United States Attorney's Office
SANDRA BROWN, Chief, Tax Division
ANDREW T. PRIBE , AUSA
300 N. Los Angeles Street, Room 7211
Los Angeles, CA 90012

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> PLAINTIFF(S) <br> v. <br> Comco Management Corporation; Concord Funding Co., LLC; Metco Management Corporation; Monex Credit Co.; Monex Deposit Co.; Newport Service Corp.; and PCCE, Inc., <br><br> DEFENDANT(S). | CASE NUMBER <br><br> **SACV08-00668 JVS (MLGx)** <br><br><br> **SUMMONS** |

TO:    THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
_____ANDREW T. PRIBE_____, whose address is:

United States Attorney's Office
300 North Los Angeles Street,
Room 7211 Tax Division
Los Angeles, CA 90012
Tel: (213) 894-6551 Fax: (213) 894-0115

an answer to the  ☒ complaint ☐_____amended complaint ☐ counterclaim ☐ cross-claim
which is herewith served upon you within __20__ days after service of this Summons upon you, exclusive
of the day of service. If you fail to do so, judgement by default will be taken against you for the relief
demanded in the complaint.

Clerk, U.S. District Court

Dated: _____JUN 1 3 2008_____

By:_____
               Deputy Clerk

*(Seal of the Court)*

THOMAS P. O'BRIEN
United States Attorney
SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division
ANDREW T. PRIBE (CA SBN: 254904)
Assistant United States Attorney
    300 N. Los Angeles Street
    Federal Building, Room 7211
    Los Angeles, California 90012
    Telephone: (213) 894-6551
    Facsimile: (213) 894-0115
    E-mail: andrew.t.pribe@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.:  **SACV08-00668 JVS (MLGx)** |
| Plaintiff, | |
| vs. | Complaint to Reduce Federal Income Tax Assessments to Judgment and to Impose Alter Ego, Single Enterprise, Successor-in-Interest, and Transferee Liability. |
| COMCO MANAGEMENT CORPORATION; CONCORD FUNDING CO., LLC; METCO MANAGEMENT CORPORATION; MONEX CREDIT CO.; MONEX DEPOSIT CO.; NEWPORT SERVICE CORP.; and PCCE, Inc., | |
| Defendants. | |

The United States of America, Plaintiff, for its complaint against Comco Management Corporation; Concord Funding Co., LLC; Metco Management Corporation; Monex Credit Co.; Monex Deposit Co.; Newport Service Corp.; and PCCE, Inc., Defendants, states:

### Jurisdiction & Venue

1.    This is a civil action to reduce federal tax assessments to judgment and to recover from entities liable for these unpaid federal tax liabilities.  This Court has jurisdiction under 26 U.S.C. § 7402 and 28 U.S.C. §§ 1331, 1340, and

- 1 -

Case 8:08-cv-00668-JVS-RNB   Document 62   Filed 11/17/09   Page 16 of 60   Page ID
#:3641
Case 8:08-cv-00668-JVS-MLG   Document 1   Filed 06/13/2008   Page 7 of 18

1    1345.

2        2.    This action is brought at the direction of the Attorney General of the

3    United States and at the request and with the authorization of the Chief Counsel of

4    the Internal Revenue Service, a delegate of the Secretary of the Treasury, pursuant

5    to 26 U.S.C. §§ 7401 and 7403.

6        3.    Venue for the action is within the Central District of California under

7    28 U.S.C. §§ 1391(b) and 1396 because all Defendants reside in this district for

8    purposes of venue.

9

10   *Defendants, other relevant entities, and terminology.*

11       4.    Comco Management Corporation is a California corporation and has

12   its principal place of business at 4910 Birch Street, Newport Beach, California.

13       5.    Concord Funding LLC is a California limited liability company with

14   its principal place of business at 4910 Birch Street, Newport Beach, California.

15       6.    Monex Credit Company is a California limited partnership with its

16   principal place of business at 4910 Birch Street, Newport Beach, California.

17       7.    Monex Deposit Company a California limited partnership with its

18   principal place of business at 4910 Birch Street, Newport Beach, California.

19       8.    Monex International, Ltd., was a California corporation that merged

20   into Monex Corporation.  Monex Corporation changed its name to PCCE, Inc.

21   Monex International, Ltd., had its principal place of business at 4910 Birch Street,

22   Newport Beach, California.

23       9.    Metco Management Corporation is a California corporation and has

24   its principal place of business at 4910 Birch Street, Newport Beach, California.

25       10.   PCCE, Inc., (f/k/a Monex Corporation) is the successor of Monex

26   International, Ltd., and has its principal place of business at either 4910 Birch

27   Street, Newport Beach, California, or 2102 Business Center Drive, # 220L, Irvine,

28   California.

Case 8:08-cv-00668-JVS-RNB    Document 62    Filed 11/17/09    Page 17 of 60    Page ID
#:1305
Case 8:08-cv-00668-JVS-MLG    Document 1    Filed 06/13/2008    Page 8 of 18

11.    Newport Service Corporation is a California corporation with its principal place of business at 4910 Birch Street, Newport Beach, California.

12.    The term "federal tax liabilities" refers to the tax liabilities specified in Count I and in paragraph 40 of Count II.

13.    The term "Monex Enterprise" refers to the collective activity of the entities specified above in the leveraged sale of precious metals to the public.

14.    The term "New Monex Entities" refers to Comco Management Corporation, Concord Funding LLC, Metco Management Corporation, Monex Credit Company, Monex Deposit Company, and Newport Service Corporation.

15.    The term "Principals of the Monex Enterprise" refers to Louis Carabini and Michael Carabini. Other Principals of the Monex Enterprise are believed to include Kimbrough Bassett, John Tate, and Gregory Walker.

## COUNT I
### Claim to reduce federal tax assessments to judgment

16.    The United States realleges paragraph 1 through 15.

17.    On June 15, 1998, a delegate of the Secretary of the Treasury timely made assessments of federal income tax against Monex International, Ltd., for the years 1980, 1981, 1982, 1983, and 1984.  The total balance of those assessments, plus statutory accruals, less credits, is:

| Year | Total Assessments | Total Credits | Assessed Balance | Accrued Interest | Accrued Failure to Pay Penalty | Total Balance (as of June 15, 2008) |
|------|------|------|------|------|------|------|
| 1980 | $35,356,587.71 | $9,422,171.89 | $25,934,415.82 | $57,853,213.09 | $0 | $83,787,628.91 |
| 1981 | $29,800,455.33 | $0 | $29,800,455.33 | $56,136,348.52 | $940,288.75 | $86,877,092.60 |
| 1982 | $53,861,309.20 | $0 | $53,861,309.20 | $93,822,426.47 | $1,411,738.75 | $149,095,474.42 |
| 1983 | $128,499.04 | $0 | $129,449.04 | $50,482.49 | $2,568.50 | $181,500.13 |
| 1984 | $24,018,087.31 | $0 | $24,018,087.31 | $33,245,880.30 | $1,031,498.75 | $58,295,466.36 |

**Total outstanding balance (as of June 15, 2008):**          **$378,237,162.42**

- 3 -

Case 8:08-cv-00668-JVS-RNB   Document 62   Filed 11/17/09   Page 18 of 60   Page ID
#:1306
Case 8:08-cv-00668-JVS-MLG   Document 1   Filed 06/13/2008   Page 9 of 18

18.     Proper and timely notice and demand for payment of these tax assessments has been made on Monex International, Ltd.

19.     Despite timely notice and demand for payment of these tax assessments, Monex International Ltd. has not fully paid the assessments.

20.     Monex International merged into Monex Corporation.

21.     Through the merger of Monex International into Monex Corporation, Monex Corporation assumed the liabilities of Monex International.

22.     Monex Corporation changed its named to PCCE, Inc.

23.     As successor to Monex International, Ltd., PCCE, Inc., is liable for the federal tax assessments.

24.     The United States is entitled to judgment against PCCE, Inc., in the amount of $378,237,162.42 through June 15, 2008, plus subsequent statutory accruals including interest and penalties plus costs and expenses.

## COUNT II
### Claim to impose alter-ego / single-enterprise liability

*General allegations*

25.     The United States realleges paragraphs 1 through 24.

26.     The New Monex Entities are liable for the unpaid federal tax assessments of Monex International, Ltd., because they are the alter egos of and constitute a single enterprise with Monex International, Ltd.

27.     The New Monex Entities share common ownership and interest with Monex International because Louis Carabini owned and controlled Monex International and owns and controls the New Monex Entities.

28.     Recognition of the corporate separateness of the New Monex Entities would be unjust as to the United States because:

       a.     Principals of the Monex Enterprise began the New Monex Entities in an attempt to escape liability for the federal tax

- 4 -

Case 8:08-cv-00668-JVS-MLG Document 1 Filed 06/13/2008 Page 10 of 18

liabilities of Monex International;

b. Principals of the Monex Enterprise sought to divert future revenues of the Monex Enterprise away from Monex International and into the New Monex Entities in an attempt to shield such future revenues of the Monex Enterprise from exposure to the federal tax liabilities;

c. In their dealings with the general public, Principals of the Monex Enterprise sought to blend together Monex International and the New Monex Entities in an effort to capitalize on the name, history, and goodwill of Monex International while using the purported corporate separateness of the entities to shield proceeds from the Monex Enterprise from exposure to the federal tax liabilities.

d. Principals of the Monex Enterprise used the resources of Monex International in furtherance of the Monex Enterprise while diverting the proceeds of the Monex Enterprise to the New Monex Entities.

e. Principals of the Monex Enterprise fragmented the Monex Enterprise into interdependent but separate entities in an effort to shield the proceeds of the Monex Enterprise from exposure to the federal tax liabilities.

### Supporting allegations

*The Continuing Tax Liabilities of Monex International*

29. When the Principals of the Monex Enterprise transferred the Monex Enterprise from Monex International to the New Monex Entities, they were aware of significant exposure for federal tax liability of Monex International.

30. From 1980 to 1985, Monex International engaged in an abusive tax

- 5 -

Case 8:08-cv-00668-JVS-RNB   Document 62   Filed 11/17/09   Page 20 of 60   Page ID
#:1588
Case 8:08-cv-00668-JVS-MLG   Document 31   Filed 06/13/2008   Page 11 of 18

1  shelter by which they reported and paid less tax than was due.

2  　　　31.　In March 1982, after an IRS audit, the IRS issued a notice of

3  proposed deficiency (commonly known as a "30-day letter") to Monex

4  International for years 1972 through 1975 for about $5.8 million (not including

5  interest and penalties).

6  　　　32.　In 1986, the United States Tax Court issued its decision in *Glass v.*

7  *Commissioner,* 87 T.C. 1087 (T.C. 1986).

8  　　　33.　In *Glass,* the Tax Court disallowed purported losses on straddle

9  transactions on the London Metal Exchange because the transactions were shams

10  without economic substance.

11  　　　34.　The abusive tax-shelter transactions engaged in by Monex

12  International in 1980 through 1984 were substantially similar to the abusive tax-

13  shelter transactions that were the subject of the *Glass* case.

14  　　　35.　In January 1988, after an IRS audit, the IRS issued a 30-day letter to

15  Monex International for years 1976 to 1979 stating the IRS's determination that

16  Monex International had a federal tax deficiency of about $1.8 million (not

17  including interest and penalties).

18  　　　36.　In August 1988, after an IRS audit, the IRS issued a 30-day letter to

19  Monex International for years 1980 and 1981 stating the IRS determination that

20  Monex International had a federal tax deficiency of about $51.2 million (not

21  including interest and penalties).

22  　　　37.　In January 1990, the IRS issued a statutory notice of deficiency to

23  Monex International stating the IRS determination that Monex International had a

24  federal tax deficiency of about $6.3 million for the tax years 1972 through 1979.

25  　　　38.　In April 1990, Monex International filed suit in the United States Tax

26  Court regarding the 1972 through 1979 deficiencies.

27  　　　39.　This 1990 Tax Court suit was not resolved until March 1995.

28  　　　40.　Regarding the 1990 Tax Court suit, the Government and the Monex

- 6 -

International stipulated to a determination of deficiencies for the 1974 and 1978 tax years. The Tax Court entered judgment pursuant to the stipulation and these deficiencies were assessed in 1995.

41.    In August 1992, the IRS issued a statutory notice of deficiency to Monex International stating the IRS determination that Monex International had a federal tax deficiency of about $172.4 million (not including interest and penalties) for tax years 1980 through 1984.

42.    In October 1992, Monex International filed suit in the United States Tax Court regarding the 1980 through 1984 deficiencies.

43.    This 1992 Tax Court suit was not resolved until February 1998 when the Government and Monex International stipulated to a determination of deficiencies for the 1980 through 1984 tax years.

44.    The Tax Court entered judgment in February 1998 pursuant to the stipulation which resulted in the tax assessments for the 1980 through 1984 years which are at issue in this case.

45.    A suit in the Tax Court generally restrains the IRS from assessing the tax, levying on property, or filing suit to collect the deficiency.

*The Principals of the Monex Enterprise altered the Corporate Structure to Avoid the Tax Liability While Continuing the Monex Enterprise*

46.    The Monex Enterprise is engaged in the leveraged sales of precious metals to the general public. The Monex Enterprise makes money from their customers through commissions, fees, monthly interest, and service charges.

47.    Beginning in the late 1980s and continuing through the early 1990s, the Principals of the Monex Enterprise transferred the operation of the Monex Enterprise from Monex International to the New Monex Entities in an effort to avoid exposure of the proceeds from the Monex Enterprise to outstanding federal tax liabilities.

- 7 -

Case 8:08-cv-00668-JVS-RNB   Document 62   Filed 11/17/09   Page 22 of 60   Page ID
#:670
Case 8:08-cv-00668-JVS-MLG   Document 10   Filed 06/13/2008   Page 13 of 18

48. Monex Deposit Company and Monex Credit Company are California Limited Partnerships formed in 1987 and constitute the core of the New Monex Entities.

49. Monex Deposit Company engages in the retail sale of precious metals.

50. Monex Credit Company provides financing to customers of Monex Deposit Company in the leveraged purchase of precious metals.

51. Newport Service Corporation provides the other entities of the Monex Enterprise with all administrative, data processing, personnel, accounting, legal, purchasing and other operational services.

52. Concord Funding Co., LLC, is a controlled entity of Monex Deposit Company and Monex Credit Company.

53. Concord Funding Co., LLC, is integrally tied to the Monex Enterprise through various agreements entered into by Concord Funding, Monex Deposit Company, and Monex Credit Company in 1995 and 2002.

54. Comco Management Company is the general partner of Monex Deposit Company.

55. Metco Management Company is the general partner of Monex Credit Company.

56. Although Louis Caribani owned and controlled Monex International and owns and controls the New Monex Entities, there were no mutual equity interests as between Monex International and the New Monex Entities.

57. Beginning in 1988, employees of Monex International were shifted to Newport Service Corporation.

58. By 1990, Monex International had no employees.

59. During and around 1991 many of the employees were shifted from Newport Service Corporation to Monex Deposit Corporation.

60. The Monex Enterprise used the same telephone numbers—800-854-

- 8 -

3361 and (714) 752-1400— both before and after the shift of the Monex Enterprise from Monex International to the New Monex Entities.

61.    The Monex Enterprise used the same office space—4910 Birch Street, Newport Beach, California—both before and after the shift of the Monex Enterprise from Monex International to the New Monex Entities.

62.    The Principals of the Monex Enterprise controlled the assets of both Monex International and the New Monex Entities.

63.    The Principals of the Monex Enterprise transferred the goodwill of Monex International and the Monex Enterprise to the New Monex Entities.

64.    In promotional materials believed to have been used by the New Monex Entities in June 1990, Monex Credit Company and Monex Deposit Company were identified as being "affiliate companies" of Monex International, Ltd.

65.    Since at least December 1996, Monex Deposit Company—through its website monex.com—has sought to capitalize on the name, history, and goodwill of the Monex Enterprise from long before the existence of the New Monex Entities.

66.    In December 1996, Monex Deposit Company on its website represented that the "Monex group of companies have served the precious metals investing public since 1967." It stated: "Monex affiliated companies have been offering precious metals investments since 1967. Monex Deposit Company (MDC) and its affiliates have executed transaction with customers totaling over $14 billion."

67.    In August 2006, Monex Deposit Company represented on its website: "Monex is the largest and oldest investment firm offering precious metals to the individual investor and as such we have products and programs that we believe are unique in the industry. Our 30-year history is a testimonial to the fact that we know this business and provide a real service to the investing public."

68.    In August 2006, Monex Deposit Company represented on its website: "Monex has the experience, expertise and resources to serve most any precious metals investor's needs.  Since 1967, well over one hundred thousand investors have purchased billions of dollars of gold, silver, platinum and palladium bullion and bullion coins from Monex."

69.    In February 2007, Monex Deposit Company represented itself to the public on its website as being "America's most trusted name in precious metals for more than 30 years."

70.    In February 2007, Monex Deposit Company on its website represented that the "Monex group of companies was founded by Louis E. Carabini in 1967 . . . ."  "For over 30 years, the Monex companies have been America's gold and precious metals investment leader."  "Today, three generations of the Carabini family are now working with the Monex companies, including founder Louis Carabini . . . his son, Michael, . . . and his daughter, Christina.  In addition, more than 20% of Monex employees have been with the company for a decade or more . . . many of them for over 25 years."

71.    The United States is entitled to judgment against Comco Management Corp.; Concord Funding, Co. LLC; Metco Management Corp.; Monex Credit Co.; Monex Deposit Co.; and Newport Service Corp. in the amount of $378,237,162.42 through June 15, 2008, plus subsequent statutory accruals including interest and penalties plus costs and expenses because they are the alter egos of and constitute a single enterprise with Monex International, Ltd.

## COUNT III

### Claim to impose successor-in-interest liability

72.    The United States realleges paragraphs 1 through 71.

73.    The New Monex Entities are liable for the unpaid federal tax assessments against Monex International, Ltd., because they are the successors-in-

- 10 -

1  interest to Monex International, Ltd.

2  74.   The New Monex Entities assumed the Monex Enterprise, and its

3  employees, location, phone numbers, and goodwill during the late 1980s and early

4  1990s without providing fair consideration to Monex International.

5  75.   Through the conveyance of the Monex Enterprise, the United States

6  is left without recourse against Monex International.

7  76.   The United States is entitled to judgment against Comco Management

8  Corp.; Concord Funding, Co. LLC; Metco Management Corp.; Monex Credit Co.;

9  Monex Deposit Co.; and Newport Service Corp. in the amount of $378,237,162.42

10  through June 15, 2008, plus subsequent statutory accruals including interest and

11  penalties plus costs and expenses because they are the successors-in-interest of

12  Monex International, Ltd.

13

14  **COUNT IV**

15  **Claim to impose fraudulent-conveyee liability**

16  77.   The United States realleges paragraphs 1 through 76.

17  78.   The New Monex Entities are liable to the United States for the assets

18  received from Monex International and their proceeds because the New Monex

19  Entities are the fraudulent conveyees of the Monex Enterprise, and its employees,

20  location, phone numbers, and goodwill from Monex International, Ltd.

21  79.   The transfer of the Monex Enterprise, and its employees, location,

22  phone numbers, and goodwill during the late 1980s and early 1990s was made

23  with the intent to prevent the United States from reaching the assets and income of

24  the Monex Enterprise.

25  80.   The transfer of the Monex Enterprise and its employees, location,

26  phone numbers, and goodwill was without receiving reasonably equivalent value

27  in return and while the Principals of Monex believed or reasonably should have

28  believed that Monex International would be without resources to pay the

- 11 -

Case 8:08-cv-00668-JVS-RNB  Document 62  Filed 11/17/09  Page 26 of 60  Page ID
#:1374
Case 8:08-cv-00668-JVS-MLG  Document 4  Filed 06/13/2008  Page 17 of 18

1  outstanding federal tax liability.

2      81.    The New Monex Entities assumed the Monex Enterprise, and its

3  employees, location, phone numbers, and goodwill during the late 1980s and early

4  1990s without providing fair consideration to Monex International.

5      82.    The United States is entitled to judgment against Comco Management

6  Corp.; Concord Funding, Co. LLC; Metco Management Corp.; Monex Credit Co.;

7  Monex Deposit Co.; and Newport Service Corp. as fraudulent conveyees of

8  Monex International, Ltd., and attaching the assets transferred and their proceeds

9  in satisfaction of the Government's claim.

10

11      WHEREFORE, the United States of America requests the Court to:

12      (a)    Enter judgment against PCCE, Inc., in the amount of $378,237,162.42

13  as of June 15, 2008 plus subsequent statutory accruals including interest and

14  penalties plus costs and expenses;

15      (b)    Find that Comco Management Corp.; Concord Funding Co., LLC;

16  Metco Management Corp.; Monex Credit Co.; Monex Deposit Co.; and Newport

17  Service Corp. are the alter egos of and constituted a single enterprise with Monex

18  International, Ltd.;

19      (c)    Find that Comco Management Corp.; Concord Funding Co., LLC;

20  Metco Management Corp.; Monex Credit Co.; Monex Deposit Co.; and Newport

21  Service Corp. are successors-in-interest of Monex International, Ltd.;

22      (d)    Enter judgment against Comco Management Corp.; Concord Funding

23  Co., LLC; Metco Management Corp.; Monex Credit Co.; Monex Deposit Co.; and

24  Newport Service Corp. in the amount of $378,237,162.42 plus subsequent

25  statutory accruals including interest and penalties plus costs and expenses;

26      (e)    Find that Comco Management Corp.; Concord Funding Co., LLC;

27  Metco Management Corp.; Monex Credit Co.; Monex Deposit Co.; and Newport

28  Service Corp. are fraudulent conveyees of the Monex Enterprise from Monex

- 12 -

1  International, Ltd.;

2       (f)    Enter judgment against Comco Management Corp.; Concord Funding

3  Co., LLC; Metco Management Corp.; Monex Credit Co.; Monex Deposit Co.; and

4  Newport Service Corp., for the assets transferred and their proceeds and attach

5  those assets and their proceeds in satisfaction of the Government's claim; and

6       (g)    Order any further relief it deems just and appropriate.

7

8

   DATED: June 13, 2008           THOMAS P. O'BRIEN

9                             United States Attorney

10                            SANDRA R. BROWN
                              Assistant United States Attorney

11                            Chief, Tax Division

12

13                            ANDREW PRIBE
                              Assistant United States Attorney

14

15                            Attorney for Defendant
                              United States of America

16

17

18

19

20

21

22

23

24

25

26

27

28

Pribe declaration dated Nov. 17, 2009
Exhibit 2

**Pribe, Andrew T. (USACAC)**

| | |
|---|---|
| **From:** | Rob Rewardtax [rob@rewardtax.com] |
| **Sent:** | Thursday, April 30, 2009 8:34 AM |
| **To:** | rob@rewardtax.com; Pribe, Andrew T. (USACAC) |
| **Cc:** | tom@rewardtax.com |
| **Subject:** | New Whistleblower Case |

AUSA Andrew Pribe:

You and I spoke on Monday night regarding U.S. v. Comco Management Corp., et al., Case No. 8:08-cv-00668 (C.D. Cal. filed June 13, 2008). At your convenience, I would like to have a teleconference with you and Revenue Officer Dan Smith, if available, to further discuss the barriers to my clients coming forward to provide additional information and assistance to you in this matter.

I spoke to the IRS Whistleblower Office on Tuesday. The person in the Whistleblower Office, with whom I am corresponding, is Al Gibson (phone # 713-209-3725). I copied you on the email that I sent to the Whistleblower Office before I spoke to Al Gibson.

My clients first contacted RO Dan Smith in 1994. RO Dan Smith knows my clients' only by the alias of "Sue." Between 1994-1999, my clients sent 15 or more packages to RO Dan Smith & other IRS employees regarding and/or including (1) alter ego corporations created for the purpose of avoiding the payment of tax, (2) general ledgers, (3) purchase/sell agreements between related companies at discounted values for the purpose of avoiding the payment of tax, (4) invoices for alleged employees who performed services at the residence of the principal of the taxpayers, which were improperly deducted as business expense, (5) details & spreadsheets regarding the allocation of expenses to taxpayers/entities for the purpose of depleting the equity of the taxpayers from 1987-1994 (leaving equity of only $3.7 million) to avoid the payment of tax, and (6) details of a Charles Schwab account of the taxpayers with approximately $700,000 of silver commodities (which RO Dan Smith was able to seize for the IRS).

My clients have additional information that we believe will materially assist you in this case.

However, as you are surely aware, my clients risk significant retribution by the taxpayers and the principals of the taxpayers should my clients be exposed as Whistleblowers/Informants. My clients fear for their safety. This is why my clients have acted anonymously up through the date of this email.

IRC s. 7623(b) states that any informant, who provides "substantial and credible information" to the IRS or DOJ after December 2006 that leads to the collection of tax, is entitled to a reward of at least 15% of the amount collected.

The Whistleblower Office has announced that Whistleblowers/Informants who already provided information prior to December 2006 are generally excluded under IRC s. 7623(b). However, an exception exists if the Whistleblower/Informant provides *additional* information after December 2006, which materially assists the IRS or DOJ in the assessment or collection of tax.

In determining whether a reward should be paid, it is the policy of the Whistleblower Office to contact the government employees who were responsible for handling a case to obtain their input. Thus, assuming that my clients come forward and provide *additional* information & documentation to help you and the DOJ to win this case, I believe the Whistleblower Office will come to you and RO Dan Smith for input regarding whether my clients should receive a reward.

Based upon my interpretation of IRC s. 7623(b), my clients' ability to qualify for a reward under IRC s. 7623(b) is materially dependent upon your mindset and recommendation. For example, if you are of the present mindset that you will win this case with or without my clients' further assistance--in other words, you currently believe that you have a very strong case even without my clients providing additional information & documentation—my clients will not be entitled to a reward no matter how good my clients' additional information is for your case--because, under such hypothetical, you don't need my clients' information to win the case. You would have won the case anyway, and, thus, my clients didn't provide substantial and credible information that led to the collection of tax.

As you can imagine, my clients are not interested in coming forward and risking further exposure unless there is a strong chance for a reward under IRC s. 7623(b).

I contacted the Whistleblower Office regarding the possibility of obtaining a contract, which is allowed by IRC s. 7623(b). In the contract, I am asking the IRS to (1) waive its potential argument that my clients are Whistleblowers/Informants who already provided information prior to December 2006 and are generally excluded under IRC s. 7623(b). In addition, I am asking the IRS to (2) waive its argument that you would have won the case anyway, and, thus, my clients didn't provide substantial and credible evidence that led to the collection of tax.

During my conversations with Al Gibson of the Whistleblower Office, he told me that the IRS is generally not inclined to agree to my requests (1) & (2) without first receiving all of the information from my clients. Thus, the Whistleblower Office wants my clients to fully divulge their names and information, participate in your trial as potential witnesses, and provide any other cooperation asked of them **before** the Whistleblower Office decides whether it will raise arguments (1) & (2) to deny my clients a reward. As you can imagine, my clients are generally not inclined to agree to this scenario.

I am contacting you with this information because the ultimate outcome of my request of the Whistleblower Office for a contract waiving arguments (1) & (2), may have an impact on your case. If the Whistleblower Office does not come to terms with my clients, it may prevent you from ever obtaining their assistance. Obviously, if you are of the present mindset that you will win this case without my clients' further assistance--in other words, you currently believe that you have a very strong case even without my clients providing additional information & documentation—then you may not be concerned that my clients will not come forward. However, if you are of the mindset that you desire my clients' assistance in your case, then I hope that you will be motivated to contact Al Gibson and assist me in obtaining the agreement of the Whistleblower Office to waive arguments (1) & (2).

If you are amenable to a teleconference to further discuss this case with me, please let me know. I will make myself available at your convenience.

Very truly yours,


Robert J. Stientjes
S & P Law Firm LLC
1120 Olivette Executive Parkway
Suite 220
Saint Louis, Missouri 63132
314.743.3292  direct telephone
314.872.3988  main office
314.872.7374  facsimile
314.705.2771  cellular
www.RewardTax.com


IRS Circular 230 Disclosure: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

<hr size=2 width="100%" align=center tabindex=-1>

**From:** Rob Rewardtax
**Sent:** Monday, April 27, 2009 7:33 PM
**To:** 'robert.b.gardner@irs.gov'
**Cc:** 'tom@rewardtax.com'; 'andrew.t.pribe@usdoj.gov'
**Subject:** New Whistleblower Case

TO:   IRS Whistleblower Office

Attn:  Robert Gardner

Dear Bob,

At your earliest convenience, I need to speak to you about a new case that I have. A brief explanation of the facts is as follows:

Corporation A has an outstanding tax assessment of $378 million arising from a tax shelter/listed transaction. The assessment stems from a Tax Court case that concluded in 1999. Corporation A was obviously the big loser. Before losing the case, the principals of Corporation A "stripped it clean" so that the IRS could collect nothing. In 2008, the IRS and DOJ initiated a Court case against Corporation A and others to preserve the statute of limitations on collection, reduce the claim to judgment, and determine that there is successor liability. The name of this collection case is U.S. v. Comco Management Corp., et al., Case No. 8:08-cv-00668 (C.D. Cal. filed June 13, 2008). The Complaint is attached to this email. This collection case is currently pending in the district court.

My client acted as an anonymous informant between 1995-1999 in providing information to an IRS revenue officer regarding attempts to avoid collection of tax by the principals of Corporation A. Based on information and belief, the IRS/DOJ is relying heavily on information provided by my client in the above referenced collection case. Best of all, my client has lots more information that would be extremely helpful to the IRS/DOJ in the above referenced collection case. My client can provide original records going back to the early 1990's, which clearly show that successor liability exists and that several defendant corporations are alter egos of Corporation A. In essence, my client believes he can give additional information, which will make the above-referenced collection case a "slam dunk" for the IRS/DOJ. As stated above, all information was provided by my client to the IRS/DOJ anonymously between 1995-1999. The IRS/DOJ does not know the identity of my client, and the IRS/DOJ will not find my client and obtain the additional information on their own.

My client wants to be brought in under the post-December 2006 law. Without this assurance by the Whistleblower Office, he is not interested in providing further cooperation. Thus, my client is looking for a contract – as allowed by IRC s. 7623. Although you have told me that the Whistleblower Office has not entered into any contracts since the law changed in December 2006, I am hoping that this unique set of circumstances will cause the Whistleblower Office to explore this option.

Please let me know when we can schedule a time to talk about this scenario further.

I am copying Andrew Pribe, the AUSA, who filed the above referenced collection case. I made contact with Mr. Pribe today.

Robert J. Stientjes
S & P Law Firm LLC
1120 Olivette Executive Parkway
Suite 220
Saint Louis, Missouri 63132
314.743.3292  direct telephone
314.872.3988  main office
314.872.7374  facsimile
314.705.2771  cellular
www.RewardTax.com

IRS Circular 230 Disclosure: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

Pribe declaration dated Nov. 17, 2009
Exhibit 3

**Pribe, Andrew T. (USACAC)**

| | |
|---|---|
| **From:** | Pribe, Andrew T. (USACAC) |
| **Sent:** | Thursday, April 30, 2009 1:45 PM |
| **To:** | Rob Rewardtax |
| **Cc:** | tom@rewardtax.com |
| **Subject:** | RE: New Whistleblower Case |

Mr. Stientjes,

I have received your e-mail.  I will review this.

Andrew Pribe

**From:** Rob Rewardtax [mailto:rob@rewardtax.com]
**Sent:** Thursday, April 30, 2009 8:34 AM
**To:** rob@rewardtax.com; Pribe, Andrew T. (USACAC)
**Cc:** tom@rewardtax.com
**Subject:** New Whistleblower Case

AUSA Andrew Pribe:

You and I spoke on Monday night regarding U.S. v. Comco Management Corp., et al., Case No. 8:08-cv-00668 (C.D. Cal. filed June 13, 2008).  At your convenience, I would like to have a teleconference with you and Revenue Officer Dan Smith, if available, to further discuss the barriers to my clients coming forward to provide additional information and assistance to you in this matter.

I spoke to the IRS Whistleblower Office on Tuesday.  The person in the Whistleblower Office, with whom I am corresponding, is Al Gibson (phone # 713-209-3725).  I copied you on the email that I sent to the Whistleblower Office before I spoke to Al Gibson.

My clients first contacted RO Dan Smith in 1994.  RO Dan Smith knows my clients' only by the alias of "Sue."  Between 1994-1999, my clients sent 15 or more packages to RO Dan Smith & other IRS employees regarding and/or including (1) alter ego corporations created for the purpose of avoiding the payment of tax, (2) general ledgers, (3) purchase/sell agreements between related companies at discounted values for the purpose of avoiding the payment of tax, (4) invoices for alleged employees who performed services at the residence of the principal of the taxpayers, which were improperly deducted as business expense, (5) details & spreadsheets regarding the allocation of expenses to taxpayers/entities for the purpose of depleting the equity of the taxpayers from 1987-1994 (leaving equity of only $3.7 million) to avoid the payment of tax, and (6) details of a Charles Schwab account of the taxpayers with approximately $700,000 of silver commodities (which RO Dan Smith was able to seize for the IRS).

My clients have additional information that we believe will materially assist you in this case.

However, as you are surely aware, my clients risk significant retribution by the taxpayers and the principals of the taxpayers should my clients be exposed as Whistleblowers/Informants.  My clients fear for their safety.  This is why my clients have acted anonymously up through the date of this email.

IRC s. 7623(b) states that any informant, who provides "substantial and credible information" to the IRS or DOJ after December 2006 that leads to the collection of tax, is entitled to a reward of at least 15% of the amount collected.

The Whistleblower Office has announced that Whistleblowers/Informants who already provided information prior to December 2006 are generally excluded under IRC s. 7623(b).  However, an exception exists if the Whistleblower/Informant provides *additional* information after December 2006, which materially assists the IRS or DOJ in the assessment or collection of tax.

In determining whether a reward should be paid, it is the policy of the Whistleblower Office to contact the government employees who were responsible for handling a case to obtain their input.  Thus, assuming that my clients come forward and provide **additional** information & documentation to help you and the DOJ win this case, I believe the Whistleblower Office will come to you and RO Dan Smith for input regarding whether my clients should receive a reward.

Based upon my interpretation of IRC s. 7623(b), my clients' ability to qualify for a reward under IRC s. 7623(b) is materially dependent upon your mindset and recommendation.  For example, if you are of the present mindset that you will win this case with or without my clients' further assistance--in other words, you currently believe that you have a very strong case even without my clients providing additional information & documentation—my clients will not be entitled to a reward no matter how good my clients' additional information is for your case--because, under such hypothetical, you don't need my clients' information to win the case.  You would have won the case anyway, and, thus, my clients didn't provide substantial and credible information that led to the collection of tax.

As you can imagine, my clients are not interested in coming forward and risking further exposure unless there is a strong chance for a reward under IRC s. 7623(b).

I contacted the Whistleblower Office regarding the possibility of obtaining a contract, which is allowed by IRC s. 7623(b).  In the contract, I am asking the IRS to (1) waive its potential argument that my clients are Whistleblowers/Informants who already provided information prior to December 2006 and are generally excluded under IRC s. 7623(b).  In addition, I am asking the IRS to (2) waive its argument that you would have won the case anyway, and, thus, my clients didn't provide substantial and credible evidence that led to the collection of tax.

During my conversations with Al Gibson of the Whistleblower Office, he told me that the IRS is generally not inclined to agree to my requests (1) & (2) without first receiving all of the information from my clients.  Thus, the Whistleblower Office wants my clients to fully divulge their names and information, participate in your trial as potential witnesses, and provide any other cooperation asked of them **before** the Whistleblower Office decides whether it will raise arguments (1) & (2) to deny my clients a reward.  As you can imagine, my clients are generally not inclined to agree to this scenario.

I am contacting you with this information because the ultimate outcome of my request of the Whistleblower Office for a contract waiving arguments (1) & (2), may have an impact on your case.  If the Whistleblower Office does not come to terms with my clients, it may prevent you from ever obtaining their assistance.  Obviously, if you are of the present mindset that you will win this case without my clients' further assistance--in other words, you currently believe that you have a very strong case even without my clients providing additional information & documentation—-then you may not be concerned that my clients will not come forward.  However, if you are of the mindset that you desire my clients' assistance in your case, then I hope that you will be motivated to contact Al Gibson and assist me in obtaining the agreement of the Whistleblower Office to waive arguments (1) & (2).

If you are amenable to a teleconference to further discuss this case with me, please let me know.  I will make myself available at your convenience.

Very truly yours,


Robert J. Stientjes
S & P Law Firm LLC
1120 Olivette Executive Parkway
Suite 220
Saint Louis, Missouri 63132
314.743.3292  direct telephone
314.872.3988  main office
314.872.7374  facsimile
314.705.2771  cellular
www.RewardTax.com

IRS Circular 230 Disclosure: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

<hr size=2 width="100%" align=center tabindex=-1>

**From:** Rob Rewardtax
**Sent:** Monday, April 27, 2009 7:33 PM
**To:** 'robert.b.gardner@irs.gov'
**Cc:** 'tom@rewardtax.com'; 'andrew.t.pribe@usdoj.gov'
**Subject:** New Whistleblower Case

TO:   IRS Whistleblower Office

Attn:  Robert Gardner

Dear Bob,

At your earliest convenience, I need to speak to you about a new case that I have.  A brief explanation of the facts is as follows:

Corporation A has an outstanding tax assessment of $378 million arising from a tax shelter/listed transaction.  The assessment stems from a Tax Court case that concluded in 1999.  Corporation A was obviously the big loser.  Before losing the case, the principals of Corporation A "stripped it clean" so that the IRS could collect nothing.  In 2008, the IRS and DOJ initiated a Court case against Corporation A and others to preserve the statute of limitations on collection, reduce the claim to judgment, and determine that there is successor liability.  The name of this collection case is U.S. v. Comco Management Corp., et al., Case No. 8:08-cv-00668 (C.D. Cal. filed June 13, 2008).  The Complaint is attached to this email.  This collection case is currently pending in the district court.

My client acted as an anonymous informant between 1995-1999 in providing information to an IRS revenue officer regarding attempts to avoid collection of tax by the principals of Corporation A.  Based on information and belief, the IRS/DOJ is relying heavily on information provided by my client in the above referenced collection case.  Best of all, my client has lots more information that would be extremely helpful to the IRS/DOJ in the above referenced collection case. My client can provide original records going back to the early 1990's, which clearly show that successor liability exists and that several defendant corporations are alter egos of Corporation A.  In essence, my client believes he can give additional information, which will make the above-referenced collection case a "slam dunk" for the IRS/DOJ.  As stated above, all information was provided by my client to the IRS/DOJ anonymously between 1995-1999.  The IRS/DOJ does not know the identity of my client, and the IRS/DOJ will not find my client and obtain the additional information on their own.

My client wants to be brought in under the post-December 2006 law.  Without this assurance by the Whistleblower Office, he is not interested in providing further cooperation.  Thus, my client is looking for a contract – as allowed by IRC s. 7623. Although you have told me that the Whistleblower Office has not entered into any contracts since the law changed in December 2006, I am hoping that this unique set of circumstances will cause the Whistleblower Office to explore this option.

Please let me know when we can schedule a time to talk about this scenario further.

I am copying Andrew Pribe, the AUSA, who filed the above referenced collection case.  I made contact with Mr. Pribe today.

Robert J. Stientjes
S & P Law Firm LLC
1120 Olivette Executive Parkway
Suite 220
Saint Louis, Missouri 63132
314.743.3292  direct telephone
314.872.3988  main office
314.872.7374  facsimile
314.705.2771  cellular
www.RewardTax.com

IRS Circular 230 Disclosure: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i)

avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

Pribe declaration dated Nov. 17, 2009
Exhibit 4

Pribe, Andrew T. (USACAC)

| From: | Pribe, Andrew T. (USACAC) |
|---|---|
| Sent: | Friday, May 08, 2009 3:37 PM |
| To: | Rob Rewardtax |
| Cc: | tom@rewardtax.com |
| Subject: | RE: New Whistleblower Case |

Mr. Stientjes,

     Whether your clients qualify under the IRS's rules for a reward is a matter for the IRS to decide, not me.

     My understanding is that your clients have represented themselves as percipient witnesses to events that may be relevant to the case. As such, their testimony may be compelled by subpoena regardless of whether they agree or not. Once formal discovery begins, it is likely that one or more of them will be served with a deposition subpoena. Presumably, once this occurs they lose any ability to claim whistle-blower status.

Andrew Pribe

**From:** Rob Rewardtax [mailto:rob@rewardtax.com]
**Sent:** Thursday, April 30, 2009 8:34 AM
**To:** rob@rewardtax.com; Pribe, Andrew T. (USACAC)
**Cc:** tom@rewardtax.com
**Subject:** New Whistleblower Case

AUSA Andrew Pribe:

You and I spoke on Monday night regarding <u>U.S. v. Comco Management Corp., et al.</u>, Case No. 8:08-cv-00668 (C.D. Cal. filed June 13, 2008). At your convenience, I would like to have a teleconference with you and Revenue Officer Dan Smith, if available, to further discuss the barriers to my clients coming forward to provide additional information and assistance to you in this matter.

I spoke to the IRS Whistleblower Office on Tuesday. The person in the Whistleblower Office, with whom I am corresponding, is Al Gibson (phone # 713-209-3725). I copied you on the email that I sent to the Whistleblower Office before I spoke to Al Gibson.

My clients first contacted RO Dan Smith in 1994. RO Dan Smith knows my clients' only by the alias of "Sue." Between 1994-1999, my clients sent 15 or more packages to RO Dan Smith & other IRS employees regarding and/or including (1) alter ego corporations created for the purpose of avoiding the payment of tax, (2) general ledgers, (3) purchase/sell agreements between related companies at discounted values for the purpose of avoiding the payment of tax, (4) invoices for alleged employees who performed services at the residence of the principal of the taxpayers, which were improperly deducted as business expense, (5) details & spreadsheets regarding the allocation of expenses to taxpayers/entities for the purpose of depleting the equity of the taxpayers from 1987-1994 (leaving equity of only $3.7 million) to avoid the payment of tax, and (6) details of a Charles Schwab account of the taxpayers with approximately $700,000 of silver commodities (which RO Dan Smith was able to seize for the IRS).

My clients have additional information that we believe will materially assist you in this case.

However, as you are surely aware, my clients risk significant retribution by the taxpayers and the principals of the taxpayers should my clients be exposed as Whistleblowers/Informants. My clients fear for their safety. This is why my clients have acted anonymously up through the date of this email.

IRC s. 7623(b) states that any informant, who provides "substantial and credible information" to the IRS or DOJ after December 2006 that leads to the collection of tax, is entitled to a reward of at least 15% of the amount collected.

The Whistleblower Office has announced that Whistleblowers/Informants who already provided information prior to December 2006 are generally excluded under IRC s. 7623(b).  However, an exception exists if the Whistleblower/Informant provides *additional* information after December 2006, which materially assists the IRS or DOJ in the assessment or collection of tax.

In determining whether a reward should be paid, it is the policy of the Whistleblower Office to contact the government employees who were responsible for handling a case to obtain their input.  Thus, assuming that my clients come forward and provide *additional* information & documentation to help you and the DOJ to win this case, I believe the Whistleblower Office will come to you and RO Dan Smith for input regarding whether my clients should receive a reward.

Based upon my interpretation of IRC s. 7623(b), my clients' ability to qualify for a reward under IRC s. 7623(b) is materially dependent upon your mindset and recommendation.  For example, if you are of the present mindset that you will win this case with or without my clients' further assistance--in other words, you currently believe that you have a very strong case even without my clients providing additional information & documentation—my clients will not be entitled to a reward no matter how good my clients' additional information is for your case--because, under such hypothetical, you don't need my clients' information to win the case.  You would have won the case anyway, and, thus, my clients didn't provide substantial and credible information that led to the collection of tax.

As you can imagine, my clients are not interested in coming forward and risking further exposure unless there is a strong chance for a reward under IRC s. 7623(b).

I contacted the Whistleblower Office regarding the possibility of obtaining a contract, which is allowed by IRC s. 7623(b).  In the contract, I am asking the IRS to (1) waive its potential argument that my clients are Whistleblowers/Informants who already provided information prior to December 2006 and are generally excluded under IRC s. 7623(b).  In addition, I am asking the IRS to (2) waive its argument that you would have won the case anyway, and, thus, my clients didn't provide substantial and credible evidence that led to the collection of tax.

During my conversations with Al Gibson of the Whistleblower Office, he told me that the IRS is generally not inclined to agree to my requests (1) & (2) without first receiving all of the information from my clients.  Thus, the Whistleblower Office wants my clients to fully divulge their names and information, participate in your trial as potential witnesses, and provide any other cooperation asked of them **before** the Whistleblower Office decides whether it will raise arguments (1) & (2) to deny my clients a reward.  As you can imagine, my clients are generally not inclined to agree to this scenario.

I am contacting you with this information because the ultimate outcome of my request of the Whistleblower Office for a contract waiving arguments (1) & (2), may have an impact on your case.  If the Whistleblower Office does not come to terms with my clients, it may prevent you from ever obtaining their assistance.  Obviously, if you are of the present mindset that you will win this case without my clients' further assistance--in other words, you currently believe that you have a very strong case even without my clients providing additional information & documentation—then you may not be concerned that my clients will not come forward.  However, if you are of the mindset that you desire my clients' assistance in your case, then I hope that you will be motivated to contact Al Gibson and assist me in obtaining the agreement of the Whistleblower Office to waive arguments (1) & (2).

If you are amenable to a teleconference to further discuss this case with me, please let me know.  I will make myself available at your convenience.

Very truly yours,


Robert J. Stientjes
S & P Law Firm LLC
1120 Olivette Executive Parkway
Suite 220
Saint Louis, Missouri 63132
314.743.3292  direct telephone
314.872.3988  main office
314.872.7374  facsimile
314.705.2771  cellular

www.RewardTax.com

IRS Circular 230 Disclosure: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

<hr size=2 width="100%" align=center tabindex=-1>

**From:** Rob Rewardtax
**Sent:** Monday, April 27, 2009 7:33 PM
**To:** 'robert.b.gardner@irs.gov'
**Cc:** 'tom@rewardtax.com'; 'andrew.t.pribe@usdoj.gov'
**Subject:** New Whistleblower Case

TO:   IRS Whistleblower Office

Attn:  Robert Gardner

Dear Bob,

At your earliest convenience, I need to speak to you about a new case that I have.  A brief explanation of the facts is as follows:

Corporation A has an outstanding tax assessment of $378 million arising from a tax shelter/listed transaction.  The assessment stems from a Tax Court case that concluded in 1999.  Corporation A was obviously the big loser.  Before losing the case, the principals of Corporation A "stripped it clean" so that the IRS could collect nothing.  In 2008, the IRS and DOJ initiated a Court case against Corporation A and others to preserve the statute of limitations on collection, reduce the claim to judgment, and determine that there is successor liability.  The name of this collection case is U.S. v. Comco Management Corp., et al., Case No. 8:08-cv-00668 (C.D. Cal. filed June 13, 2008).  The Complaint is attached to this email.  This collection case is currently pending in the district court.

My client acted as an anonymous informant between 1995-1999 in providing information to an IRS revenue officer regarding attempts to avoid collection of tax by the principals of Corporation A.  Based on information and belief, the IRS/DOJ is relying heavily on information provided by my client in the above referenced collection case.  Best of all, my client has lots more information that would be extremely helpful to the IRS/DOJ in the above referenced collection case. My client can provide original records going back to the early 1990's, which clearly show that successor liability exists and that several defendant corporations are alter egos of Corporation A.  In essence, my client believes he can give additional information, which will make the above-referenced collection case a "slam dunk" for the IRS/DOJ.  As stated above, all information was provided by my client to the IRS/DOJ anonymously between 1995-1999.  The IRS/DOJ does not know the identity of my client, and the IRS/DOJ will not find my client and obtain the additional information on their own.

My client wants to be brought in under the post-December 2006 law.  Without this assurance by the Whistleblower Office, he is not interested in providing further cooperation.  Thus, my client is looking for a contract – as allowed by IRC s. 7623. Although you have told me that the Whistleblower Office has not entered into any contracts since the law changed in December 2006, I am hoping that this unique set of circumstances will cause the Whistleblower Office to explore this option.

Please let me know when we can schedule a time to talk about this scenario further.

I am copying Andrew Pribe, the AUSA, who filed the above referenced collection case.  I made contact with Mr. Pribe today.

Robert J. Stientjes
S & P Law Firm LLC
1120 Olivette Executive Parkway
Suite 220

Saint Louis, Missouri 63132
314.743.3292  direct telephone
314.872.3988  main office
314.872.7374  facsimile
314.705.2771  cellular
www.RewardTax.com

IRS Circular 230 Disclosure: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

Pribe declaration dated Nov. 17, 2009
Exhibit 5

**Pribe, Andrew T. (USACAC)**

| | |
|---|---|
| **From:** | Rob Rewardtax [rob@rewardtax.com] |
| **Sent:** | Friday, May 08, 2009 4:26 PM |
| **To:** | Pribe, Andrew T. (USACAC) |
| **Subject:** | Response |
| **Attachments:** | 5.8.09.informer.privilege.ltr.pdf |

Mr. Pribe,

Thank you for your response via email to my previous letter.  I am including another letter, which memorializes my clients' request that you do everything in your power to preserve their confidentiality and anonymity using the Informant's Privilege.

I would still like to speak via telephone with regards to your case.  By working together, my clients and I can assist you to present a very strong case, and my clients and I can assist you and the IRS in finding more hidden assets of the Defendants and their principals.

Very truly yours,

Robert J. Stientjes
S & P Law Firm LLC
1120 Olivette Executive Parkway
Suite 220
Saint Louis, Missouri 63132
314.743.3292  direct telephone
314.872.3988  main office
314.872.7374  facsimile
314.705.2771  cellular
www.RewardTax.com

IRS Circular 230 Disclosure: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.



**S & P LAW FIRM, LLC**
1120 Olivette Executive Parkway
Suite 220
St. Louis, MO 63132
314-872-3988 Telephone
*www.rewardtax.com*  314-872-7374 Facsimile

| PRIVILEGED & CONFIDENTIAL COMMUNICATION |
| --- |

May 8, 2009

**VIA ELECTRONIC MAIL**

Andrew T. Pribe
Office of the U.S. Attorney
300 North Los Angeles Street
Room 7211
Los Angeles, CA 90012

    Re:    Protection of Informants in <u>U.S. v. Comco Management Corp., et al.</u>,
           Case No. 8:08-cv-00668 (C.D. Cal. filed June 13, 2008).

Dear Mr. Pribe:

    As we previously discussed during our teleconference on April 27, 2009, I represent informants who previously provided information to the Internal Revenue Service that is relevant to the above referenced case.  The informants sent information to the Internal Revenue Service that applies to both alter ego liability and other unrelated alleged fraudulent transactions (non-alter ego) of Defendants, between 1994 and 1999.

    The information provided by the informants assisted Revenue Officer Dan Smith in seizing assets of Defendants as follows:

| Location of Assets Seized | Date of Seizure | Amount Seized |
| --- | --- | --- |
| Union Bank | 4/22/97 | $   409,463.79 |
| Charles Schwab | 6/11/97 | $   285,855.89 |
| Farmers & Merchants Bank | 5/12/97 | $   602,522.16 |
| Oppenheimer & Co. | 5/23/97 | $   200,000.00 |
| Oppenheimer & Co. | 6/16/97 | $   287,514.20 |
|  |  |  |
| TOTAL |  | $ 1,785,356.04 |

[One of the collection steps taken by Revenue Officer Dan Smith was the seizure of 30 Comex Silver Warehouse Receipts through ED & F MAN INTERNATIONAL INC. that was forwarded through Oppenheimer & Co.  It is unknown whether the value of this seizure is included in the amounts above.]

    Some of the non-alter ego packages included: (1) invoices for alleged employees who performed services at the residence of the principal of the Defendants, which were improperly

deducted as business expense; (2) information regarding the failure to include the value of sales incentive and awards trips on Forms W-2 issued to employees; and (3) information regarding questions posed by Revenue Officers Dan Smith and Revenue Agent K.C. Peredo involving other related entities such as UniMet Trading Corporation and UniMet Credit Corporation. There was also an audit for Newport Service Corporation that took place in 1994-1995 for years 1989 and 1990. The Internal Revenue Service determined that Newport Service Corporation overstated expenses by approximately $ 750,000 during the years at issue. These non-alter ego packages are unrelated to the issues in the above referenced collection case.

The items included in the packages are items that the Defendants would identify as only available and directly traceable to the informants. Thus, providing the contents of the packages would immediately identify the informants to the Defendants.

The informants are very concerned about confidentiality and ask that you take all reasonable and legal steps to protect their identity. The informants are aware that someone within the government has already "let slip" to the Defendants that the government has received informant information regarding the issues in this case. As of the date of this letter, the Defendants are diligently seeking to identify the individual(s) who provided the informant information. In addition, the Defendants are in the process of preparing discovery to be served on the government in an attempt to identify the informants. The informants will be subject to extreme retribution should their identity as informants be established, and the informants fear for their safety.

As stated above, the non-alter ego packages sent to the IRS include information that is irrelevant to the case at hand and, thus, are not discoverable by the Defendants at this time. *U.S. v. Estate Preservation Servs.*, 202 F.3d 1093, 1103 (9th Cir. 2000).

With respect to the alter ego packages, the informants request that all documents, writings, spreadsheets, etc. provided by the informants, as well as the transcripts of communications with the informants, be protected or their disclosure delayed using any and all legal devices intended to protect informants, including but not limited to the Informer's Privilege. In addition, if there is an item from an alter ego package, which the government is considering turning-over in discovery, it would be appreciated if the government gives advanced warning to the informants through their counsel.

The government's privilege to not disclose the identity of its informants, usually referred to as the Informer's Privilege, is in reality the government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law. *Roviaro v. U.S.*, 353 U.S. 53 (1957). To promote the enforcement of law, the courts created the Informer's Privilege in order to encourage private citizens to make full disclosure to law enforcement agencies. To quiet an informant's fear of reprisal, the law promises him anonymity. *Id.*

The scope of the privilege is designed to encompass its underlying purpose--where the disclosure of the contents of a communication will tend to reveal the identity of an informer, the contents are privileged. Similarly, when the existence of an informant is revealed but not the informant's identity, the privilege is still applicable. The privilege is only limited by the applicability of fundamental requirements of fairness. Only where the disclosure of an

2

informant's identity, or of the contents of his communication, is relevant and helpful to a defense, or essential to a fair determination of a cause, will the privilege be denied. *Id.*

The Informer's Privilege can be invoked by the government in cases involving either criminal or civil actions. *Wirtz v. Continental Fin. & Loan Co. of West End*, 326 F.2d 561 (5th Cir. 1964). In determining whether the privilege applies, the courts will weigh the government's need to preserve the anonymous identity of the informant against a claim that withholding of such identity will unduly prejudice the case. Whether the Informer's Privilege applies depends on the facts and circumstances of each individual case. *Id.* Courts generally settle disputes regarding the applicability of the Informer's Privilege by utilizing an *in camera* inspection of the disputed items. *Timken Roller Bearing Co. v. U.S.*, 38 F.R.D. 57, 65-66 (D.C. Ohio 1964) (tax refund suit).

In *Suarez v. United States*, 582 F.3d 1007 (5th Cir. 1978), the Court of Appeals held that an informant's testimony was not essential to the appellants' defense in the sense that the informant was not the only likely source of alleged exculpatory information. Instead, the Court of Appeals decided that there were other witnesses who could testify concerning appellants' activities, which were in question. In *Mitchell v. Bass*, 252 F.2d 513 (8th Cir. 1958), the Court of Appeals stated that the privilege is only unavailable where the statement "would not embarrass the informants in their social relations or their employment or endanger their safety."

In the case at hand, the information provided by the informants is not helpful to the case of the Defendants. Instead, it shows that the Defendants created alter ego entities for the purpose of avoiding the collection of tax. Thus, the information is clearly not exculpatory. In addition, the Defendants themselves are the best source of any alleged exculpatory information regarding whether their activities created alter ego entities. All information provided by the informants was obtained from the Defendants and, thus, the information is already in the possession of the Defendants or has been intentionally destroyed by the Defendants in order to avoid the information's discovery by the Internal Revenue Service. Thus, the facts of the case at hand are similar to the facts in *Suarez*, where the court concluded there are other witnesses and other sources of information that could be tapped in order to find any alleged exculpatory information. Furthermore, the informants' information in the case at hand would not aid the Defendants, but it would necessarily reveal the identity of the informants. The public interest in preserving the anonymity of the informants to keep the flow of information going to the government far outweighs any interest the Defendants could have in knowing their identity.

I would like to speak with you regarding the Informer's Privilege and the opportunity of the government to preserve the anonymity of the informants. I respectfully request that you contact me at your convenience to discuss this matter further. I look forward to your response.

Sincerely,

*/s/ Robert Stientjes*

Robert Stientjes
Principal
**S & P Law Firm, LLC**

3

Pribe declaration dated Nov. 17, 2009
Exhibit 6

**Pribe, Andrew T. (USACAC)**

| | |
|---|---|
| **From:** | Pribe, Andrew T. (USACAC) |
| **Sent:** | Monday, May 11, 2009 2:38 PM |
| **To:** | Rob Rewardtax |
| **Subject:** | Telephone conference |

Mr. Stientjes:

Are you available for a phone conference tomorrow or Wednesday at either 11 a.m. or 2 p.m.?

Andrew Pribe

Andrew T. Pribe
Assistant United States Attorney
Central District of California
Room 7211, Federal Building
300 North Los Angeles Street
Los Angeles, California  90012
T: (213) 894-6551
F: (213) 894-0115
E: andrew.t.pribe@usdoj.gov

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is strictly prohibited. If you have received this transmission in error, please immediately notify the sender by replying to this e-mail message. Please destroy the original transmission and its attachments without reading or saving in any manner.

Pribe·declaration dated Nov. 17, 2009
Exhibit 7

**Pribe, Andrew T. (USACAC)**

| | |
|---|---|
| **From:** | Rob Rewardtax [rob@rewardtax.com] |
| **Sent:** | Monday, May 11, 2009 3:44 PM |
| **To:** | Pribe, Andrew T. (USACAC) |
| **Cc:** | tom@rewardtax.com |
| **Subject:** | RE: Telephone conference |

Mr. Pribe:

I am available tomorrow (Tuesday) at 2 PM pacific time.  I look forward to your call.

Robert J. Stientjes
S & P Law Firm, LLC
1120 Olivette Executive Parkway
Suite 220
Saint Louis, Missouri 63132
314.743.3292  direct telephone
314.872.3988  main office
314.872.7374  facsimile
314.705.2771  cellular
www.RewardTax.com

IRS Circular 230 Disclosure: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

<hr size=2 width="100%" align=center tabindex=-1>
**From:** Pribe, Andrew T. (USACAC) [mailto:Andrew.T.Pribe@usdoj.gov]
**Sent:** Monday, May 11, 2009 4:46 PM
**To:** Rob Rewardtax
**Subject:** Telephone conference

Mr. Stientjes:

Are you available for a phone conference tomorrow or Wednesday at either 11 a.m. or 2 p.m.?

Andrew Pribe

Andrew T. Pribe

Assistant United States Attorney

Central District of California

Room 7211, Federal Building

300 North Los Angeles Street

Los Angeles, California  90012

T: (213) 894-6551

F: (213) 894-0115

E: andrew.t.pribe@usdoj.gov

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is strictly prohibited. If you have received this transmission in error, please immediately notify the sender by replying to this e-mail message. Please destroy the original transmission and its attachments without reading or saving in any manner.

Pribe declaration dated Nov. 17, 2009
Exhibit 8

**Pribe, Andrew T. (USACAC)**

| | |
|---|---|
| **From:** | Pribe, Andrew T. (USACAC) |
| **Sent:** | Monday, May 11, 2009 3:53 PM |
| **To:** | Rob Rewardtax |
| **Subject:** | RE: Telephone conference |

I will call you then.

**From:** Rob Rewardtax [mailto:rob@rewardtax.com]
**Sent:** Monday, May 11, 2009 3:44 PM
**To:** Pribe, Andrew T. (USACAC)
**Cc:** tom@rewardtax.com
**Subject:** RE: Telephone conference

Mr. Pribe:

I am available tomorrow (Tuesday) at 2 PM pacific time.  I look forward to your call.

Robert J. Stientjes
S & P Law Firm, LLC
1120 Olivette Executive Parkway
Suite 220
Saint Louis, Missouri 63132
314.743.3292  direct telephone
314.872.3988  main office
314.872.7374  facsimile
314.705.2771  cellular
www.RewardTax.com

IRS Circular 230 Disclosure: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

<hr size=2 width="100%" align=center tabindex=-1>

**From:** Pribe, Andrew T. (USACAC) [mailto:Andrew.T.Pribe@usdoj.gov]
**Sent:** Monday, May 11, 2009 4:46 PM
**To:** Rob Rewardtax
**Subject:** Telephone conference

Mr. Stientjes:

Are you available for a phone conference tomorrow or Wednesday at either 11 a.m. or 2 p.m.?

Andrew Pribe

Andrew T. Pribe

Assistant United States Attorney

Central District of California

Room 7211, Federal Building

300 North Los Angeles Street

Los Angeles, California  90012

T: (213) 894-6551

F: (213) 894-0115

E: andrew.t.pribe@usdoj.gov

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is strictly prohibited. If you have received this transmission in error, please immediately notify the sender by replying to this e-mail message. Please destroy the original transmission and its attachments without reading or saving in any manner.

Pribe declaration dated Nov. 17, 2009
Exhibit 9

**Pribe, Andrew T. (USACAC)**

| | |
|---|---|
| **From:** | Pribe, Andrew T. (USACAC) |
| **Sent:** | Thursday, May 28, 2009 10:58 AM |
| **To:** | Rob Rewardtax |
| **Subject:** | Correspondence |



Stientjes
052809.pdf

Andrew T. Pribe
Assistant United States Attorney
Central District of California
Room 7211, Federal Building
300 North Los Angeles Street
Los Angeles, California 90012
T: (213) 894-6551
F: (213) 894-0115
E: andrew.t.pribe@usdoj.gov

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is strictly prohibited. If you have received this transmission in error, please immediately notify the sender by replying to this e-mail message. Please destroy the original transmission and its attachments without reading or saving in any manner.

U. S. Department of Justice

*United States Attorney*
*Central District of California*

---

*Andrew Pribe*
*Assistant United States Attorney*

*Federal Building, Suite 7211*
*300 North Los Angeles Street*
*Los Angeles, California 90012*
*(213) 894-6551 (voice)*
*(213) 894-0115 (fax)*
*andrew.t.pribe@udsoj.gov*

*via e-mail*
Robert Stientjes
S&P Law Firm, LLC
1120 Olivette Executive Parkway
Suite 220
St. Louis, MO 63132

May 28, 2009

Dear Mr. Stientjes:

The Government would still like to meet with you and your client to discuss what information and documents he has.

Unfortunately, as we recently discussed, we cannot guarantee that your client will remain anonymous. Further, it is likely that we cannot keep the documents that he provides to us confidential. As you understand, the Government is in litigation and the court will not allow us to rely on secret evidence.[1]

While we would like to meet with you and your client, you and your client must not be under a misapprehension about the extent to which his identity or the documents he provides may be protected from disclosure. While I understand the quandary this poses for your client, I cannot promise otherwise.

Sincerely,

THOMAS P. O'BRIEN
United States Attorney

ANDREW T. PRIBE
Assistant U.S. Attorney

---

[1] *See, e.g.,* Fed. R. Civ. P. 26(a)(1)(A)(i) and (ii).

Pribe declaration dated Nov. 17, 2009
Exhibit 10

**Pribe, Andrew T. (USACAC)**

| | |
|---|---|
| **From:** | Rob Rewardtax [rob@rewardtax.com] |
| **Sent:** | Friday, May 29, 2009 3:36 PM |
| **To:** | Pribe, Andrew T. (USACAC) |
| **Subject:** | RE: Correspondence |

Thank you for your letter of yesterday.

My client has submitted all of his information to the Internal Revenue Service under the guise of a claim under the Tax Whistleblower Reward Program.  A Form 211 was filed with the IRS disclosing my client's name, contact information, etc.  The information turned over to the IRS includes 25 banker's boxes of documents.  The information also includes a detailed legal memorandum drafted by myself that suggests ways for you to utilize the information for the benefit of the United States.

The information that my client turned over is under the control of the IRS Whistleblower Office in Washington, DC.  I have been informed by them that they will put the Form 211 and accompanying information through their normal intake process, which includes performing a "taint" analysis to determine if any of the information cannot be disclosed to the field agent and you—i.e., whether any of the information is subject to attorney-client privilege.

They have also suggested to me that I should allow them to complete their intake process before I engage in any additional communication with you and RO Dan Smith.

I look forward to assisting you in the future.

Very truly yours,

Robert J. Stientjes
S & P Law Firm LLC
1120 Olivette Executive Parkway
Suite 220
Saint Louis, Missouri 63132
314.743.3292  direct telephone
314.872.3988  main office
314.872.7374  facsimile
314.705.2771  cellular
www.RewardTax.com

IRS Circular 230 Disclosure: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

<hr size=2 width="100%" align=center tabindex=-1>
**From:** Pribe, Andrew T. (USACAC) [mailto:Andrew.T.Pribe@usdoj.gov]
**Sent:** Thursday, May 28, 2009 1:00 PM
**To:** Rob Rewardtax
**Subject:** Correspondence

<<Stientjes 052809.pdf>>

Andrew T. Pribe

1

Assistant United States Attorney

Central District of California

Room 7211, Federal Building

300 North Los Angeles Street

Los Angeles, California  90012

T: (213) 894-6551

F: (213) 894-0115

E: andrew.t.pribe@usdoj.gov

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is strictly prohibited. If you have received this transmission in error, please immediately notify the sender by replying to this e-mail message. Please destroy the original transmission and its attachments without reading or saving in any manner.